[No. 41990-4-II.   Division Two.   April 2, 2013.]

THE STATE OF WASHINGTON, *Respondent*, v. JOEL ALEXANDER WILSON, *Appellant*.

330

*Jodi R. Backlund* and *Manek R. Mistry* (of *Backlund & Mistry*), for appellant.

*Deborah S. Kelly, Prosecuting Attorney*, and *Lewis M. Schrawyer, Deputy*, for respondent.

¶1 HUNT, J. — Joel Alexander Wilson appeals his jury trial convictions and sentences for 13 counts of first degree child rape of his ex-girlfriend's daughter, AH.[1] He argues that the trial court violated his right to a public trial and his right to be present at all critical stages of his proceeding when the bailiff excused two jurors for illness-related reasons before voir dire began in the courtroom.[2] We hold that these two administrative juror excusals occurred before Wilson's right to a public trial and right to be present were triggered; accordingly, we affirm.

## FACTS

¶2 There is scant evidence in the record about the pre-voir-dire jury selection process in Wilson's case. From

---

[1] To provide confidentiality, we use the juvenile victim's initials.

[2] We address Wilson's additional arguments later in the unpublished portion of this opinion.

the evidence we do have, it appears that prospective jurors were given a questionnaire on the first day of jury service. The questionnaire (1) informed the jurors that Wilson was charged with first degree child rape; (2) solicited information about the jurors' personal experiences with sexual assault; and (3) required the jurors to sign the questionnaire after completing it, certifying that their answers were true to the best of their knowledge and belief. The prospective jurors completed this questionnaire at some point, although it is not clear when it was administered.

¶3 Before the jury venire was called into the courtroom for voir dire, the trial court's bailiff excused from the jury pool two ill persons who had reported for jury service: One juror had "back problems," was on "narcotic pain killers," and was having "problems standing and sitting"; he was apparently sick enough that the bailiff excused him "before [the juror] even said anything" or had a chance to complete the juror questionnaire. Verbatim Report of Proceedings (VRP) (Feb. 14, 2011) at 25, 26. The second excused juror apparently completed the juror questionnaire, but he was eventually excused as being "ill." VRP (Feb. 14, 2011) at 24. In excusing both jurors, the bailiff followed the trial court's written policy, which allows administrative staff to excuse jurors pretrial for illness-related reasons, and to reschedule them for jury service at a later date. Both administrative excusals occurred before 9:00 AM.

¶4 The trial court subsequently informed both counsel and Wilson that the bailiff had excused two potential jurors for being ill; but it offered to bring the excused jurors into the public courtroom for voir dire in Wilson's presence, if he wished. Wilson, however, did not pursue this offer. Later, the trial court conducted voir dire of the jury venire in open court and in Wilson's presence. With the parties' assent, the parties empanelled 14 jurors, including 2 alternates, for

Wilson's trial. The jury convicted Wilson as charged.[3] He appeals.

## ANALYSIS

¶5 Wilson argues that the trial court violated his state and federal constitutional rights to a public trial because the bailiff excused two jurors for illness-related reasons before voir dire began in the courtroom without the trial court's first conducting a *Bone-Club* analysis.[4] He also argues that the trial court violated his right to be present at all critical stages of his proceeding because the two ill jurors were excused outside his presence. Disagreeing, we hold that the bailiff's pre-voir-dire, administrative excusal of two ill jurors did not implicate Wilson's public trial right or his right to be present.

### I. DEFENDANT'S RIGHT TO A PUBLIC TRIAL

¶6 We first address Wilson's argument that the trial court violated his right to a public trial. Wilson contends that we must reverse his convictions because (1) the bailiff "closed" a portion of "jury selection" when she excused the two ill jurors outside the courtroom before voir dire began; (2) both the United States and the Washington Supreme Courts have held that the public trial right applies to "jury selection" and that a trial court must conduct a *Bone-Club* analysis before closing any portion of "jury selection" proceedings; and (3) "jury selection" had already commenced in his case when the bailiff excused the two ill jurors because the prospective jurors were under "oath" and they had received

---

[3] After we heard oral argument in this case, the Washington Supreme Court issued its decision in *State v. Sublett*, 176 Wn.2d 58, 72-73, 292 P.3d 715 (2012), announcing a new "experience and logic" test. In our view, this new test applies to hardship excusals and other pre-voir-dire portions of the jury selection process. Therefore, we asked the parties to file supplemental briefs addressing the impact, if any, of this new decision on Wilson's pending appeal. We received these supplemental briefs in January 2013.

[4] *State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995).

a juror questionnaire specifically "tailored to the facts of [his] case." Suppl. Br. of Appellant at 5-9. This argument fails.

## A. Standard of Review

¶7 Whether a defendant's constitutional right to a public trial has been violated is a question of law, which we review de novo on direct appeal. *State v. Paumier*, 176 Wn.2d 29, 34, 288 P.3d 1126 (2012); *State v. Lormor*, 172 Wn.2d 85, 90, 257 P.3d 624 (2011). A criminal defendant has a right to a public trial under the state and federal constitutions. *Lormor*, 172 Wn.2d at 90-91; U.S. CONST. amends. VI, XIV; WASH. CONST. art. I, § 22. Likewise, the public has a complementary right to open proceedings under the state and federal constitutions. *Lormor*, 172 Wn.2d at 91; U.S. CONST. amend. I; WASH. CONST. art. I, § 10.

¶8 The right to a public trial, however, is not absolute, and a trial court may close the courtroom under certain circumstances. *State v. Momah*, 167 Wn.2d 140, 148, 217 P.3d 321 (2009), *cert. denied*, 131 S. Ct. 160 (2010); *State v. Easterling*, 157 Wn.2d 167, 174-75, 137 P.3d 825 (2006). To protect the public trial right and to determine whether a closure is appropriate, Washington courts must apply the *Bone-Club* factors[5] and make specific findings on the record

---

[5] The *Bone-Club* factors are as follows:

"1. The proponent of closure or sealing must make some showing [of a compelling interest], and where that need is based on a right other than an accused's right to a fair trial, the proponent must show a 'serious and imminent threat' to that right.

"2. Anyone present when the closure motion is made must be given an opportunity to object to the closure.

"3. The proposed method for curtailing open access must be the least restrictive means available for protecting the threatened interests.

"4. The court must weigh the competing interests of the proponent of closure and the public.

"5. The order must be no broader in its application or duration than necessary to serve its purpose."

*Bone-Club*, 128 Wn.2d at 258-59 (alteration in original) (quoting *Allied Daily Newspapers of Wash. v. Eikenberry*, 121 Wn.2d 205, 210-11, 848 P.2d 1258 (1993)).

to justify a closure. *Momah*, 167 Wn.2d at 148-49. This requires that the trial court consider "alternatives to closure" to ensure the least restrictive means of closure is adopted. *Paumier*, 176 Wn.2d at 35; *State v. Wise*, 176 Wn.2d 1, 10, 288 P.3d 1113 (2012). Failure to conduct a *Bone-Club* analysis before closing a proceeding required to be open to the public is a structural error warranting a new trial. *Paumier*, 176 Wn.2d at 35.

¶9  But, as our Supreme Court has also recognized and we discuss more fully below, "not every interaction between the court, counsel, and defendants will implicate the right to a public trial, or constitute a closure if closed to the public." *State v. Sublett*, 176 Wn.2d 58, 71, 292 P.3d 715 (2012) (lead opinion). Therefore, before determining whether there was a violation of Wilson's right to a public trial, we must first consider "whether the proceeding at issue implicates the public trial right, thereby constituting a closure at all." *Sublett*, 176 Wn.2d at 71.

## B. Threshold Public Trial Issue

¶10  Our Supreme Court recently issued several public trial cases on the same day, including *Paumier*, *Wise*, and *Sublett*. Collectively, these opinions appear to articulate two steps for determining the threshold issue of whether a particular proceeding implicates a defendant's public trial right, thereby requiring a *Bone-Club* analysis before the trial court may "close" the courtroom: First, does the proceeding fall within a specific category of trial proceedings that our Supreme Court has already established implicates the public trial right? Second, if the proceeding does not fall within such a specific category, does the proceeding satisfy *Sublett*'s "experience and logic" test?[6]

### 1. Specific proceeding implicating public trial right

¶11  In *Paumier* and *Wise*, our Supreme Court confronted the now familiar question of whether the trial court violated

---

[6] We discuss the *Sublett* experience and logic test later in this opinion.

a defendant's right to a public trial by privately questioning individual jurors in chambers during voir dire without first conducting a *Bone-Club* analysis. *See Paumier,* 176 Wn.2d at 34-37; *Wise,* 176 Wn.2d at 11-15. To resolve the threshold issue of whether this type of proceeding implicated the defendants' public trial right, the Supreme Court relied on earlier cases in which it had already established that the public trial right applied to jury voir dire proceedings. *Wise,* 176 Wn.2d at 11 (quoting *In re Pers. Restraint of Orange,* 152 Wn.2d 795, 804, 100 P.3d 291 (2004), and citing *Momah,* 167 Wn.2d at 151-52, and *State v. Strode,* 167 Wn.2d 222, 227, 232, 217 P.3d 310 (2009)); *Paumier,* 176 Wn.2d at 34-35 (citing *Momah* and *Wise*). Accepting jury voir dire as an established proceeding to which the public trial right applies, the Supreme Court held that (1) the *Paumier* and *Wise* trial courts had closed their courtrooms by questioning prospective jurors in chambers without first conducting a *Bone-Club* analysis; and (2) such courtroom closures are structural error, requiring reversal of these defendants' convictions. *See Paumier,* 176 Wn.2d at 35-37; *Wise,* 176 Wn.2d at 11-13, 15.

## 2. Experience and logic test

¶12 In contrast, in *Sublett,* our Supreme Court faced the novel question of whether the trial court violated a defendant's public trial right by discussing with counsel in chambers a question that the jury had posed during jury deliberations. The Court had not previously addressed or established whether a deliberating jury's question implicated a defendant's public trial right; therefore, the Court could not rely merely on its case law, or the "first step" that it had used in *Paumier* and *Wise,* to resolve whether such a proceeding implicates the public trial right. Thus, our Supreme Court created a "second step" by adopting the

United States Supreme Court's experience and logic test.[7] *Sublett*, 176 Wn.2d at 72-73 (citing *Press-Enter. Co. v. Superior Court*, 478 U.S. 1, 8-10, 106 S. Ct. 2735, 92 L. Ed. 2d 1 (1986) (*Press* II)). Applying this experience and logic test, our Supreme Court held that (1) the public trial right does not "attach" to proceedings involving jury questions during deliberations; and (2) therefore, Sublett's trial court did not close the courtroom or violate his public trial right by discussing the juror's question in chambers without first conducting a *Bone-Club* analysis.[8] *Sublett*, 176 Wn.2d at 75-78.

## C. Pretrial Administrative Juror Excusals

¶13 We now apply this two-step process to determine whether Wilson's public trial right was implicated here. We first ask whether the bailiff's excusing two ill jurors pretrial, before voir dire began, falls within a category of proceedings that our Supreme Court has already acknowledged implicates a defendant's public trial right, as did the voir dire proceedings in *Paumier* and *Wise*. If the bailiff's pre-voir-dire juror excusals do not fall within such a category, we next ask whether this proceeding meets the *Sublett* experience and logic test, thus implicating Wilson's public trial right. Answering "no" to both inquiries, we hold that the bailiff's pre-voir-dire, administrative excusals of these two ill jurors did not implicate Wilson's public trial right.

---

[7] Only four justices signed the lead opinion in *Sublett*; but with Justice Stephens' concurrence, a majority adopted the federal experience and logic test as the appropriate guide for determining "when the public trial right attaches." *Sublett*, 176 Wn.2d at 136 (Stephens, J., concurring). More recently our Supreme Court cited *Sublett* in unanimously applying this experience and logic test in *In re Personal Restraint of Yates*, 177 Wn.2d 1, 28-29, 296 P.3d 872 (2013).

[8] In applying this experience and logic test to juror questions during deliberations, our Supreme Court in *Sublett* seems to have established a specific category of trial proceedings that does not implicate the public trial right.

### 1. No case law addressing whether such excusals implicate defendant's public trial right

■ ■ ¶14 Wilson argues that the bailiff's pre-voir-dire excusal of two jurors for illness-related reasons falls within *Paumier*'s and *Wise*'s category of proceedings that the Supreme Court has already established implicates the public trial right because these juror excusals were part of the "jury selection." Suppl. Br. of Appellant at 5-6. Although we agree that these juror excusals were part of the general "jury selection" process in Wilson's case, we do not agree that Supreme Court precedent holds that the public trial right applies to the entire jury selection process; rather, the juror excusals addressed in *Paumier* and *Wise* both involved the narrower, voir dire component of jury selection.

¶15 More specifically, as we explain in more detail below, existing case law does not hold that a defendant's public trial right applies to every component of the broad "jury selection" process (which process includes the initial summons and administrative culling of prospective jurors from the general adult public and other preliminary administrative processes). Rather, existing case law addresses application of the public trial right related *only* to a specific component of jury selection—i.e., the "voir dire" of prospective jurors who form the venire (comprising those who respond to the court's initial jury summons and who are *not* subsequently excused administratively). Thus, whether pretrial administrative juror excusals implicate a defendant's public trial right is one of first impression.

¶16 In *Paumier* and *Wise*, our Supreme Court appears to have used the terms "jury selection" and "voir dire" interchangeably in the *Bone-Club* context.[9] But we view this

---

[9] *See, e.g.*, *Paumier*, 176 Wn.2d at 34-35 (stating " '[t]his presumption of openness extends to *voir dire*' " and that "individually questioning potential jurors is a courtroom closure requiring a *Bone-Club* analysis" (emphasis added) (quoting *Momah*, 167 Wn.2d at 148)); *Wise*, 176 Wn.2d at 12 n.4 (stating "[i]t is not

interchangeable usage as inadvertent and *not* as evincing the Court's intent to treat these two terms as synonymous for precedential purposes.[10] On the contrary, *Paumier, Wise,* and the cases these opinions cite for support all involved courtroom closures during only the *voir dire component* of jury selection.[11] *Paumier,* 176 Wn.2d at 34-35; *Wise,* 176

necessary to engage in a complete 'experience and logic test,' because 'it is well settled that the right to a public trial also extends to *jury selection'* " (emphasis added) (citing *Sublett,* 176 Wn.2d at 73-75 and quoting *State v. Brightman,* 155 Wn.2d 506, 515, 122 P.3d 150 (2005))).

[10] We further note that in *Sublett,* issued on the same day as *Paumier* and *Wise,* our Supreme Court also cited the United States Supreme Court and noted, "[R]esolution of whether the public trial right attaches to a particular proceeding cannot be resolved based on the label given to the proceeding." *Sublett,* 176 Wn.2d at 72-73 (citing *Press* II, 478 U.S. at 8-10). This quote supports our view that our Supreme Court did not intend its interchangeable use of "voir dire" and "jury selection" in *Paumier* and *Wise* to mean that these two terms are functionally equivalent or that its holdings in the voir dire context provide precedential authority for any and all phases of the broader "jury selection" process we describe here.

[11] Similarly, the vast majority of Washington cases finding a violation of the public trial right have all involved the public's exclusion from voir dire or a similar proceeding amounting to its functional equivalent, where individual jurors are examined for case-specific reasons and counsel and the court have the opportunity to exercise peremptory and/or for-cause juror challenges. *See Strode,* 167 Wn.2d 222 (individual voir dire of jurors in chambers violated public trial right); *Brightman,* 155 Wn.2d 506 (public trial right violated when entire voir dire closed to all spectators); *Orange,* 152 Wn.2d 795 (same); *State v. Slert,* 169 Wn. App. 766, 282 P.3d 101 (2012) (violation of public trial right where counsel and the court excused four jurors "for cause" in chambers based on information contained in the jurors' questionnaires, which were specifically designed to test the jurors' fitness to serve on Slert's case), *petition for review filed,* No. 87844-7 (Wash. Sept. 7, 2012); *State v. Leyerle,* 158 Wn. App. 474, 242 P.3d 921 (2010) (individual voir dire of juror in court hallway violated public trial right); *State v. Bowen,* 157 Wn. App. 821, 239 P.3d 1114 (2010) (individual voir dire of jurors in chambers violated public trial right); *State v. Erickson,* 146 Wn. App. 200, 189 P.3d 245 (2008) (individual voir dire of jurors in jury room violated public trial right), *petition for review filed,* No. 82050-3 (Wash. Sept. 2, 2008); *State v. Duckett,* 141 Wn. App. 797, 173 P.3d 948 (2007) (same), *petition for review filed,* No. 80965-8 (Wash. Dec. 11, 2007).

Wilson cites no case holding that the public trial right attaches to preliminary administrative juror excusals, such as those at issue here, or to any component of the jury selection process outside voir dire; nor are we independently aware of any such case. Wilson does, however, cite our split decision in *Slert* as support for his argument that his public trial right had attached to these administrative juror excusals because (1) the prospective jurors had been given a juror questionnaire that asked information specific to his case, and (2) the jurors were instructed that they were under oath when they completed it. In *Slert,* the trial court gave prospective jurors a questionnaire asking about the jurors' familiarity with publicity from Slert's two prior trials, both of which had resulted in convictions.

Wn.2d at 11-12. These cases did not, however, address or purport to characterize as "courtroom closures" the entire jury selection spectrum (from initial summons to jury empanelment); nor did these cases address any preliminary administrative component of the jury selection process, such as the bailiff's ill juror excusal component at issue here.

¶17 Accordingly, we do not interpret "jury selection" and "voir dire" as coextensive; rather, we distinguish between them.[12] We hold that the bailiff's two pre-voir-dire excusals of ill jurors do not fall within a specific category or trial proceeding that *Paumier*, *Wise*, or any other Supreme Court case has already recognized as implicating a defendant's public trial right. Accordingly, we next apply the second test, experience and logic.

### 2. Administrative juror excusals do not meet *Sublett* experience and logic test

■ ¶18 As the *Sublett* Court noted, "[T]he United States Supreme Court formulated and explained the experience

---

*Slert*, 169 Wn. App. at 770-71. Based on the jurors' questionnaire responses, the trial court and counsel then held an in-chambers conference and excused four jurors from the jury pool "for cause." *Slert*, 169 Wn. App. at 771. Under these specific facts, we held that (1) the in-chambers conference was "part of the jury selection process to which the public trial right applied" because the jurors had been excused for "case-specific reasons" "based on their questionnaire answers"; and (2) the trial court had violated Slert's right to a public trial because it did not conduct a *Bone-Club* analysis before excusing the jurors outside the courtroom. *Slert*, 169 Wn. App. at 774-75. Although the trial court in Wilson's case also gave the prospective jurors a questionnaire that asked information specific to his case, the bailiff did not excuse the two jurors "for cause," for any reasons related specifically to Wilson's case, or based on any information contained in their questionnaire responses. Thus, the facts in *Slert* are distinguishable, and its holding does not apply here.

[12] In our view, the general process of "jury selection" begins when the trial court issues the juror summons to members of the public, some of whom do not respond and some of whom respond but who, for various hardship reasons unrelated to the specific case to be tried, are unable to serve at that time. In contrast, "voir dire" is a later-occurring component of the broader "jury selection" process, which provides the parties in a specific case with an opportunity to question prospective jurors in the open public courtroom to examine them for biases and to obtain a fair and impartial jury to try their specific case.

and logic test to determine whether the core values of the public trial right are implicated." *Sublett*, 176 Wn.2d at 72-73 (citing *Press* II, 478 U.S. at 8-10). Under this experience and logic test, "the experience prong . . . asks 'whether the place and process have historically been open to the press and general public.' " *Sublett*, 176 Wn.2d at 73 (quoting *Press* II, 478 U.S. at 8); *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 29, 296 P.3d 872 (2013). "The logic prong asks 'whether public access plays a significant positive role in the functioning of the particular process in question.' " *Sublett*, 176 Wn.2d at 73 (quoting *Press* II, 478 U.S. at 8); *Yates*, 177 Wn.2d at 29. If the answer to *both* prongs of the experience and logic test is yes, the public trial right "attaches" and the trial court must consider the *Bone-Club* factors on the record before closing the proceeding to the public. *Sublett*, 176 Wn.2d at 73.

¶19 In applying the logic prong, courts should consider "the values served by open courts." *Sublett*, 176 Wn.2d at 74. One manner of considering these values is by comparing the challenged proceeding's nature with the nature of the criminal trial itself: For example, do the same criminal rights attach (rights to appear, to cross-examine witnesses, to present exculpatory evidence, and to exclude illegally obtained evidence)? What is the importance of the challenged proceeding in the overall trial context? And, is the jury present during the challenged proceeding? *Sublett*, 176 Wn.2d at 74.

> But not every case will fit cleanly within a comparison between the proceeding at issue and trial in general, so the trial or reviewing court must consider whether openness will "enhance[ ] both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system."

*Sublett*, 176 Wn.2d at 74-75 (alteration in original) (quoting *Press-Enter. Co. v. Superior Court*, 464 U.S. 501, 508, 104 S. Ct. 819, 78 L. Ed. 2d 629 (1984) (*Press* I)).

### a. Experience prong

¶20 Wilson fails to show that the bailiff's excusing two jurors for illness-related reasons before voir dire began was a proceeding that implicated his public trial right. Wilson has not cited any case holding that (1) preliminary juror excusals for illness or other juror hardships have historically been open to the public or (2) the public trial right attaches to any component of jury selection that does not involve "voir dire" or a similar jury selection proceeding involving the exercise of "peremptory" challenges and "for cause" juror excusals.[13] Nor does there appear to be any cases so holding.

¶21 The criminal rules of procedure, RCW 2.36.100(1), and case law clearly demonstrate that (1) "jury selection" and "voir dire" are separate but related concepts; and (2) the public trial right historically has *not* attached to certain statutory juror excusals, such as hardships under RCW 2.36.100(1), which the trial court may make administratively before voir dire begins. For example, the criminal rules of procedure describe "jury selection" and "voir dire" in different sections, indicating that our courts have historically distinguished between these proceedings. *Compare* CrR 6.3 (describing administrative components of jury selection), *with* CrR 6.4(b) (describing juror voir dire as involving peremptory and for cause juror challenges).

¶22 CrR 6.3, entitled "Selecting the Jury," also provides:

> When the action is called for trial, the jurors shall be selected at random from the jurors summoned who have appeared *and have not been excused.*

---

[13] Again, we note that Wilson relies on *Slert* and argues that his public trial rights had attached when the bailiff excused the two ill jurors because (1) the trial court administered a juror questionnaire and (2) the jurors signed this questionnaire under oath. But again, unlike the facts in *Slert*, the bailiff here did not excuse the jurors "for cause" based on the information contained in their questionnaires.

CrR 6.3 (emphasis added). The original 1973 version of this rule made clear that a court clerk could preliminarily excuse some jurors appearing for jury service and that such administrative juror excusals would occur *before* voir dire began.[14] CrR 6.3 does not describe the procedures that a trial court or its clerk must follow before excusing prospective jurors under this rule. But both the current version of CrR 6.3 and its original language contemplate administrative excusal of some jurors appearing for service before voir dire by counsel and before trial begins in the public courtroom.[15] This CrR 6.3 pretrial administrative juror-excusal procedure contrasts starkly with CrR 6.4(b), which describes "voir dire" as a process where the trial court and counsel ask prospective jurors questions to assess their ability to serve on the defendant's particular case and to enable counsel to exercise intelligent "for cause" and "peremptory" juror challenges. CrR 6.4(b).[16] The record here shows that the trial court was engaged in the administrative component of the jury selection process, as described in

---

[14] Former CrR 6.3 (1973) read:

When the action is called for trial, the clerk shall prepare separate ballots containing the names of the jurors summoned who have appeared and not been excused, and deposit them in a box. *He shall draw the required number of names for purposes of voir dire examination.*

(Emphasis added.)

[15] See also *Yates*, in which the Supreme Court rejected an argument that "court personnel's [pretrial administrative] exclusion of jurors without Yates's participation" violated his due process rights to a jury drawn from a fair cross section of the community. *Yates*, 177 Wn.2d at 20-21.

[16] CrR 6.4(b) provides:

A voir dire examination shall be conducted *for the purpose of discovering any basis for a challenge for cause and for the purpose of gaining knowledge to enable an intelligent exercise of peremptory challenges.* The judge shall initiate the voir dire examination by identifying the parties and their respective counsel and by briefly outlining the nature of the case. *The judge and counsel may then ask the prospective jurors questions touching on their qualifications to serve as jurors in the case,* subject to the supervision of the court as appropriate to the facts of the case.

(Emphasis added.)

CrR 6.3, when the bailiff excused the two ill jurors before the voir dire component commenced.

¶23 Furthermore, both the Legislature and our Supreme Court have acknowledged that a trial court has discretion to excuse jurors outside the public courtroom[17] for statutorily defined reasons, provided such juror excusals do not amount to for-cause excusals or peremptory challenges traditionally exercised during voir dire in the courtroom. Under RCW 2.36.100(1), the trial court has "broad discretion" to excuse prospective jurors "upon a showing of undue *hardship*, extreme inconvenience, public necessity, *or any reason deemed sufficient by the court.*" *State v. Rice*, 120 Wn.2d 549, 560-62, 844 P.2d 416 (1993); RCW 2.36.100(1) (emphasis added). Consistently, our Supreme Court has held that this statute allows a trial court to delegate hardship and other administrative juror excusals to clerks and other court agents, provided that the excusals are not the equivalent of peremptory or for-cause juror challenges. *Rice*, 120 Wn.2d at 561; *see also State v. Tingdale*, 117 Wn.2d 595, 599-600, 817 P.2d 850 (1991).[18]

¶24 Although our Supreme Court has not expressly addressed whether a defendant has a public trial right to have juror excusals under RCW 2.36.100(1) conducted in the public courtroom, the facts in *Rice* suggest that the public trial right does not attach to such administrative juror excusals. For example, in *Rice*, the county clerk had excused prospective jurors for hardship and other statutory reasons by "telephone" and after receiving the jurors' "jury selection questionnaires." *Rice*, 120 Wn.2d at 560. Such telephone excusals would likely have been conducted outside the public courtroom; yet our Supreme Court made no mention of the defendant's potential public trial rights. RCW 2.36.100(1)'s legislative history also strongly suggests

---

[17] See, e.g., *Yates*, 177 Wn.2d at 20-21, citing with approval Pierce County Superior Court's juror excusal and deferral processes.

[18] *Accord State v. Langford*, 67 Wn. App. 572, 583-84, 837 P.2d 1037 (1992), *review denied*, 121 Wn.2d 1007, *cert. denied*, 510 U.S. 838 (1993).

that such administrative juror excusals conducted by a court agent are not proceedings that historically have been open to the public.[19]

¶25 Similarly, here, the bailiff excused two jurors under RCW 2.36.100(1), solely for illness-related reasons, before the venire was brought into the courtroom for voir dire. These two excusals complied with *Rice* and with the trial court's written policy, which allows administrative staff to excuse jurors pretrial for illness-related reasons. Although the prospective jurors were also given juror questionnaires with substantive information about Wilson's case, nothing in the record indicates that the bailiff excused the jurors "for cause" based on any information contained in their questionnaire responses. Given the weight of authority, we conclude that Wilson fails to show that the bailiff's two administrative juror excusals under RCW 2.36.100(1) were improper or that they constituted a proceeding that has been historically open to the public.

---

[19] RCW 2.36.100(1)'s legislative amendments strongly suggest that even if the public trial right once applied to such statutory juror excusals, the right has been eroded or eliminated overtime. RCW 2.36.100(1) has existed in its current form since 1979, although the statute itself dates back to 1909. *See* LAWS OF 1909, ch. 73, § 7; LAWS OF 1979, 1st Ex. Sess., ch. 135, § 3. The law as it existed in 1909 allowed any juror summoned to be excused from jury service *"when his own health requires,* on account of death in his family, or if illness in his family [is] of such character that he is required to be in attendance thereupon." LAWS OF 1909, ch. 73, § 7 (emphasis added). The 1909 statute further provided:

Any person applying to be excused from jury service for any of the causes herein specified, *shall* be placed upon oath (or affirmation) to testify truly in all respects as to the cause for such excuse, and that he will answer truly any question put to him by the judge with respect thereto.

LAWS OF 1909, ch. 73, § 7 (emphasis added).

Two years later, in 1911, the Legislature amended the statute, substituting the word "shall" in the 1909 statute with the word "may." LAWS OF 1911, ch. 57, § 7. Thus, by 1911, it was no longer required, but only permissible, for a juror claiming a statutory excusal to "be placed upon oath or affirmation to testify truly . . . as to the cause for such excuse." LAWS OF 1911, ch. 57, § 7. The next amendment occurred in 1979, and it deleted the juror oath/affirmation requirement entirely. And in 1993, our Supreme Court interpreted the statute to allow delegation of RCW 2.36.100(1)'s statutory excusals to clerks and other court agents. *Rice*, 120 Wn.2d at 560-61. This legislative history and later case law interpretation show that the public trial right has eroded (not increased) over time, at least with respect to hardships and other statutory excusals.

Thus, he fails to satisfy the first, experience prong of the *Sublett* experience and logic test.[20]

### b. Logic prong

¶26 Wilson also fails to satisfy the second, logic prong of the test. He has not shown that " 'public access plays a significant positive role in the functioning of the particular process in question.' " *Sublett*, 176 Wn.2d at 73 (quoting *Press* II, 478 U.S. at 8). As we have just noted, RCW 2.36.100(1) gives the trial court and its delegated agents "broad discretion" to excuse members of the jury pool for "undue hardship, extreme inconvenience, public necessity, or any reason deemed sufficient by the court." *Rice*, 120 Wn.2d at 560-62; RCW 2.36.100(1). The bailiff acted within her delegated authority when she excused the two jurors solely for the illness-related reasons allowed by statute.

¶27 Furthermore, unlike the for-cause excusals and peremptory challenges that the parties explore during voir dire, the bailiff's pre-voir-dire juror excusals here were not a "proceeding so similar to the trial itself that the same rights attach, such as the right to appear, to cross-examine witnesses, to present exculpatory evidence, and to exclude illegally obtained evidence." *Sublett*, 176 Wn.2d at 77. Because the bailiff also had broad discretion to excuse members of the jury pool for "hardship" or "any reason deemed sufficient [to] the court," Wilson has not shown that openness during this pre-voir-dire juror excusal proceeding would have " 'enhance[d] both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system.' " RCW 2.36.100(1); *Sublett*, 176 Wn.2d at 75 (alteration in original) (quoting *Press* I, 464 U.S. at 508). We, therefore, conclude that Wilson fails to satisfy the second prong of the experience and logic test.

---

[20] We could end our analysis of the public trial issue with Wilson's failure to meet the first prong of the test. But because this case involves a new interpretation of the Supreme Court's recent adoption of the experience and logic test in *Sublett*, we address the second prong of the test as well.

¶28 Because Wilson fails to meet both prongs of *Sublett*'s "experience and logic" test,[21] we hold that (1) his public trial right was not implicated when the bailiff excused the two jurors solely for illness-related reasons before voir dire began; and (2) thus, no courtroom closure occurred, no *Bone-Club* factors applied, and the trial court did not violate Wilson's public trial right.

## II. RIGHT TO BE PRESENT

¶29 We next address whether the trial court's pre-voir-dire administrative juror excusals violated Wilson's constitutional right to be present at a critical stage of his proceeding. We hold that it did not.

¶30 We review de novo whether a trial court violated a defendant's constitutional right to be present. *State v. Irby*, 170 Wn.2d 874, 880, 246 P.3d 796 (2011). The state and federal constitutions guarantee a defendant the "fundamental right to be present at all critical stages of a trial." *Irby*, 170 Wn.2d at 880; *see also United States v. Gagnon*, 470 U.S. 522, 526, 105 S. Ct. 1482, 84 L. Ed. 2d 486 (1985); U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. The right to be present, however, is not absolute. *Irby*, 170 Wn.2d at 881. " '[T]he presence of a defendant is a condition of due process *to the extent that a fair and just hearing would be thwarted by his absence.*' " *Irby*, 170 Wn.2d at 881 (emphasis added) (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105-07, 54 S. Ct. 330, 78 L. Ed. 674 (1934), *overruled in part on other grounds sub nom. Malloy v. Hogan*, 378 U.S. 1, 84 S. Ct. 1489, 12 L. Ed. 2d 653 (1964)). Therefore, a defendant has the right to be present " 'whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge.' " *Irby*, 170 Wn.2d at 881 (quoting *Snyder*, 291 U.S. at 105-06).

---

[21] See *Yates*, holding in the personal restraint context that the burden is on the defendant to satisfy both prongs of the *Sublett* experience and logic test in order to show a courtroom closure requiring a *Bone-Club* analysis. *Yates*, 177 Wn.2d at 29.

But he "does not have a right to be present *when his . . . 'presence would be useless, or the benefit but a shadow.'*" *Irby*, 170 Wn.2d at 881 (emphasis added) (quoting *Snyder*, 291 U.S. at 106-07).

¶31 Again, Wilson baldly asserts that (1) the trial court violated his right to be present because this right "encompasses jury selection," and (2) the trial court was engaged in the jury selection process for which he had a constitutional right to be present when the bailiff excused the two ill jurors before voir dire. Br. of Appellant at 34. Again, we disagree.

¶32 Our Supreme Court recently addressed which portions of the jury selection process a defendant has a constitutional right to attend.[22] *Irby*, 170 Wn.2d at 882-84. In *Irby*, the Supreme Court reaffirmed the rule that "the due process right to be present 'extends to jury *voir dire.'*" *Irby*, 170 Wn.2d at 883 (emphasis added) (quoting *State v. Wilson*, 141 Wn. App. 597, 604, 171 P.3d 501 (2007)). The Supreme Court also addressed whether the right to be present also attaches to additional portions of the jury selection.[23] *Irby*, 170 Wn.2d at 883-84.

---

[22] Irby was on trial for first degree burglary and first degree murder. *Irby*, 170 Wn.2d at 877. The trial court required prospective jurors to complete a questionnaire seeking information about their familiarity with the substantive issues in Irby's case, including whether any of the jurors' family members had been murdered. *Irby*, 170 Wn.2d at 877-78. Based on the jurors' questionnaire responses, the trial court and counsel used e-mail to excuse seven members of the jury pool "for cause," specifically related to issues involved in Irby's case. *See Irby*, 170 Wn.2d at 877-78. The Supreme Court held that (1) the e-mail exchange between the trial court and counsel was a portion of the jury selection process that Irby had a constitutional right to attend, and (2) the trial court violated his right to be present by excusing jurors for cause in his absence. *Irby*, 170 Wn.2d at 882-84.

[23] We note that in *Irby* the Supreme Court also appears to have used the terms "jury selection" and "voir dire" interchangeably in setting out the basic rules involving the right to be present, although the Court was obviously talking about and discussing cases involving jury voir dire. *See Irby*, 170 Wn.2d at 883-84 (citing *United States v. Gordon*, 264 U.S. App. D.C. 334, 829 F.2d 119, 124 (1987); *Gomez v. United States*, 490 U.S. 858, 873, 109 S. Ct. 2237, 104 L. Ed. 2d 923 (1989)). Again, we do not view these two terms as synonyms and caution against using them as such.

¶33 The Court distinguished between (1) pre-voir-dire administrative excusals of potential jurors based on their "general qualifications" to serve on *any* jury and (2) questioning and excusing prospective jurors based on their "fitness to serve [in the defendant's] particular case," such as individual juror evaluations and dismissals "for cause." *Irby*, 170 Wn.2d at 882. In making this distinction, the Court relied on two cases holding that hardships and other preliminary administrative juror excusals do not implicate a defendant's right to be present: *Irby*, 170 Wn.2d at 882 (citing *Wright v. State*, 688 So. 2d 298, 300 (Fla. 1996) (distinguishing general jury qualification from jury qualification to try a specific case and holding that general qualification process is not critical stage requiring the defendant's presence) and quoting *Commonwealth v. Barnoski*, 418 Mass. 523, 530, 531, 638 N.E.2d 9 (1994) (distinguishing " 'preliminary hardship colloqu[y]' " from " 'individual, substantive[ ] voir dire' ") (alterations in original) (internal quotation marks omitted)).

¶34 Here, the trial court's bailiff did not excuse the two ill or medically incapacitated jurors "for cause" or after evaluating their "fitness to serve"[24] on Wilson's case in particular.[25] Rather, the record shows that the bailiff acted purely administratively when she excused the two jurors for legitimate medical reasons, including that one of the jurors was on "narcotic pain killers" and having "problems standing and sitting." VRP (Feb. 14, 2011) at 25, 26. As we have already explained, these excusals by the bailiff were consistent with the trial court's broad discretion under RCW 2.36.100(1) to delegate to court personnel the authority to excuse prospective jurors administratively for "undue hardship, extreme inconvenience, public necessity, or any

---

[24] *Irby*, 170 Wn.2d at 882.

[25] Although the trial court gave prospective jurors a jury questionnaire specific to his case, nothing in the record indicates that the bailiff based her excusals on such information.

reason deemed sufficient by the court." RCW 2.36.100(1); *Rice*, 120 Wn.2d at 560-62.

¶35 Furthermore, Wilson has not shown that his presence for these administrative excusals bore any " 'relation, reasonably substantial, to the ful[l]ness of his opportunity to defend against the charge' " or " 'that a fair and just hearing would be thwarted by his absence.' " *Irby*, 170 Wn.2d at 881 (quoting *Snyder*, 291 U.S. at 105-08). These jurors were not excused with reference to Wilson or the issues in his case; on the contrary, the excusals protected the health of the other jurors, the court staff, the public, and the parties involved in Wilson's trial. And, because the bailiff or trial court had discretion to excuse these jurors for "any reason deemed sufficient by the court,"[26] Wilson's presence during these juror excusals would have been " 'useless, or the benefit but a shadow.' " *Irby*, 170 Wn.2d at 881 (quoting *Snyder*, 291 U.S. at 106-07).

¶36 We hold that Wilson did not have a constitutional right to be present for these pre-voir-dire administrative juror excusals and that the trial court did not err by allowing the bailiff to excuse these jurors in Wilson's absence.[27] We affirm.[28]

¶37 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the

---

[26] RCW 2.36.100(1).

[27] Nevertheless, we further note that the trial court offered to bring the excused jurors to the court room for voir dire at Wilson's request; this offer would have cured the alleged violation about which Wilson now complains on appeal. But Wilson did not accept this offer.

[28] Analyzing Wilson's other arguments in the unpublished portion of this opinion also results in affirmance.

Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, C.J., and Van Deren, J., concur.