FILED
COURT OF APPEALS
DIVISION II

2013 SEP -4 AM 10: 16

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42575-1-II |
| Respondent, | |
| v. | |
| JESS JAMES VARNELL, | UNPUBLISHED OPINION |
| Appellant. | |

HUNT, P.J. — Jess James Varnell appeals his jury conviction for first degree escape. He argues that the trial court violated his right to a public trial when it conducted an in-chambers conference during voir dire and excused two potential jurors without first conducting a *Bone-Club*[1] analysis. He also raises numerous claims in his Statement of Additional Grounds (SAG), most of which claim ineffective assistance of counsel; he appears also to assert insufficient evidence of the knowledge element of his escape conviction. We hold that the superior court's failure to conduct a *Bone-Club* analysis was structural error, compelling us to reverse Varnell's conviction under the Supreme Court's recent decision in *State v. Wise*.[2] We further hold that the evidence at trial was sufficient to support his escape conviction; thus, there is no double jeopardy bar to retrial on remand.

---

[1] *State v. Bone-Club*, 128 Wn.2d 254, 258-59, 906 P.2d 325 (1995).

[2] *State v. Wise*, 176 Wn.2d 1, 6, 288 P.3d 1113 (2012).

FACTS

In November 2010, Jess James Varnell pled guilty to attempted unlawful possession of methamphetamine; the superior court sentenced him to 207 days of confinement, to be served through "Breaking The Cycle" (BTC), a home-based alternative to confinement program.[3] Clerk's Papers (CP) at 100. Conditions for participating in BTC required Varnell to sign in by noon during the first 30 days of the program, excluding weekends and holidays, and to maintain a verifiable physical address within Pierce County. Following the first 30 days, Varnell was required to check in twice weekly for the next thirty days and to call as instructed. Varnell's BTC case manager, Joan Spencer, informed him that (1) he could change his physical address as many times as he wished, but that he must submit the change to BTC; (2) if he failed to maintain a verifiable address in Pierce County, he would fail the BTC program and would have to complete his sentence in the Pierce County Jail; (3) if he failed the program, he would have to report to BTC; and (4) failure to report could result in the State's issuing an escape warrant and charging him with the crime of escape.[4]

Varnell signed in with BTC on a daily basis until January 5, 2011, after which he failed to report as required. The State charged him with first degree escape, for which he requested a jury trial. On the second day of trial, the State reminded the court that two potential jurors had

---

[3] The BTC program has since changed its name to "Alternative To Confinement." Verbatim Report of Proceedings (VRP) (July 26, 2011) at 13.

[4] Despite serving their sentences outside state-operated facilities, BTC participants are deemed "in custody." VRP (July 25, 2011) at 23. Thus, a BTC participant's jail record shows that he is "in custody" but physically located at the addressed he provides to BTC. VRP (July 25, 2011) at 23.

No. 42575-1-II

been excused for cause from the jury venire during a previous in-chambers conference, which

they had failed to mention on the record[5]:

> [THE STATE]: Your Honor, it did occur to me, though, yesterday we had a little counsel [sic] in chambers during jury selection where we discussed that number 6 and number 26?
> [VARNELL]: 28.
> [THE STATE]: 28 should be excused for cause. And I don't think we ever put that on the record.
> THE COURT: I don't think we did either.
> [THE STATE]: Thank you.
> THE COURT: So we were excusing 6 and 28 for cause. That was because both of them had employment and other issues that would not allow them to sit on the jury.

Verbatim Report of Proceedings (VRP) (July 26, 2011) at 77. Varnell voiced no objection to this

procedure.

The jury found Varnell guilty of first degree escape. The trial court sentenced Varnell to

a low-end standard range sentence of 33 months. Varnell appeals his conviction.

ANALYSIS

Varnell argues that trial court violated his right to a public trial under the Washington

Constitution, article 1, section 22, and the Sixth Amendment to the United States Constitution

when it held an in-chambers conference during jury selection and excused two potential jurors

off the record and not in open court. Holding that the Supreme Court's recent decision in *Wise*

controls here, we agree.

I. STANDARD OF REVIEW FOR PUBLIC TRIAL RIGHT

Whether the right to a public trial has been violated is a question of law that we review de

novo. *State v. Sublett*, 176 Wn.2d 58, 70, 292 P.3d 715 (2012). The state and federal

---

[5] The parties did not designate the pre-trial voir dire proceedings as part of the record on appeal.

constitutions guarantee criminal defendants and the public the right to open and public trials. U.S. CONST. amend. VI; WASH. CONST. art. I, §§ 10, 22. The right to a public trial is not, however, an absolute one, and a trial court may close the courtroom under certain circumstances. *State v. Momah*, 167 Wn.2d 140, 148, 217 P.3d 321 (2009), *cert. denied*, 131 S. Ct. 160 (2010); *State v. Easterling*, 157 Wn.2d 167, 174-75, 137 P.3d 825 (2006). Before closing a courtroom, Washington courts must first apply the *Bone-Club* factors[6] and make specific findings on the record to justify a closure. *Momah*, 167 Wn.2d at 148-49. Failure to conduct a *Bone-Club* analysis before closing a proceeding required to be open to the public is a structural error warranting a new trial. *State v. Paumier*, 176 Wn.2d 29, 35, 288 P.3d 1126 (2012). But because "not every interaction between the court, counsel, and defendants will implicate the right to a public trial, or constitute a closure if closed to the public," courts must first consider "whether the proceeding at issue implicates the public trial right, thereby constituting a closure at all." *Sublett*, 176 Wn.2d at 71.

---

[6] The *Bone-Club* factors are as follows:
> "1. The proponent of closure or sealing must make some showing [of a compelling interest], and where that need is based on a right other than an accused's right to a fair trial, the proponent must show a 'serious and imminent threat' to that right.
> 2. Anyone present when the closure motion is made must be given an opportunity to object to the closure.
> 3. The proposed method for curtailing open access must be the least restrictive means available for protecting the threatened interests.
> 4. The court must weigh the competing interests of the proponent of closure and the public.
> 5. The order must be no broader in its application or duration than necessary to serve its purpose."

*Bone-Club*, 128 Wn.2d at 258-59 (alteration in original) (quoting *Allied Daily Newspapers v. Eikenberry*, 121 Wn.2d 205, 210-11, 848 P.2d 1258 (1993)).

## II. Voir Dire Excusal of Jurors Implicates Public Trial Right

As we recently explained in *Wilson*, our Supreme Court has already established that the public trial right applies to jury selection. *State v. Wilson*, 174 Wn. App. 328, 335-40, 298 P.3d 148, 152 (2013) (discussing *Paumier* and *Wise*). Therefore, here, we address only whether the trial court's in-chambers excusal of two jurors violated Varnell's public trial right. *See Wise*, 176 Wn.2d at 11; *See also Paumier*, 176 Wn.2d at 34 (quoting *Momah*, 167 Wn.2d at 148) ("'This presumption of openness extends to voir dire.'").

Our Supreme Court has developed a two-step process for determining whether a particular proceeding implicates a defendant's public trial right:

> First, does the proceeding fall within a specific category of trial proceedings that our Supreme Court has already established implicates the public trial right? Second, if the proceeding does not fall within such a specific category, does the proceeding satisfy *Sublett*'s "experience and logic" test?

174 Wn. App. at 335 (footnote omitted) (discussing *Paumier*, *Wise*, and *Sublett*). *State v. Slert*[7] involved facts similar to those here: Without first conducting a *Bone-Club* analysis, the trial court conducted an in-chambers off-the-record conference with both counsel and excused four potential jurors; we held that this proceeding violated Slert's public trial right and his right to be present.

---

[7] *State v. Slert*, 169 Wn. App. 766, 774, 282 P.3d 101 (2012), *review granted*, 176 Wn.2d 1031 (2013).

The sparse record before us in this appeal nevertheless reveals that, during "jury selection" on the first day of trial,[8] the trial court held an in-chambers conference and excused two potential jurors "for cause" because of "employment *and other issues*." VRP (July 26, 2011) at 77 (emphasis added). The State, however, contends that the trial court's excusal of venire members 6 and 28 was based on "hardship" and "did not turn on any case-specific reason." Br. of Resp't at 12.[9] The record before us does not support this assertion. On the contrary, the record reflects the trial court's "for cause" excusal of two potential jurors during the in-chambers conference. Without more information, the trial court's mention that these "for cause" excusals were for "employment and other issues"[10] does not support the State's contention that the excusals were *not* for case-specific reasons. We will not resort to guessing what these "other issues" may have been, especially where the State had the opportunity to provide additional details when it brought the otherwise silent record to the trial court's attention the next day.[11]

---

[8] It appears that the trial court's use of the term "jury selection" here refers to the "voir dire" portion of the jury selection process and, therefore, differs from the pre voir dire, administrative, hardship juror dismissals at issue in *Wilson*, which did not fall within the category of proceedings that our Supreme Court has held implicates a defendant's public trial right. *Wilson*, 174 Wn. App. at 337. We also recognized the Supreme Court's interchangeable use of the terms "voir dire" and "jury selection," but only in the factual context of cases addressing courtroom closures during the "voir dire" portion of the "jury selection" process. *Wilson*, 174 Wn. App. at 338-40 (citing *Wise*, 176 Wn.2d at 11-12; *Paumier*, 176 Wn.2d at 34-35).

[9] The respondent erroneously identifies the excused juror as juror 26 in its brief but as the record reflects, it was juror 28 who was excused "for cause". *See* VRP (July 26, 2011) at 77.

[10] VRP (July 26, 2011) at 77.

[11] We also note that, if there were other parts of the record that support the State's contention, it could have designated those parts for inclusion in the record on appeal under RAP 9.2(c).

The State also argues that the in-chambers conference was not improper and did not trigger application of the *Bone-Club* factors because it "involved the resolution of purely legal issues that did not require the resolution of disputed facts." Br. of Resp't at 14. Again, the record before us on appeal does not support this contention. On the contrary, the record shows only that the in-chambers conference resulted in the excusal of two potential jurors for cause, outside of open court.

We commend the parties and the trial court's after-the-fact attempt to mitigate the previous day's failure to address the *Bone-Club* factors before conducting an in-chambers and off-the-record conference at which jurors were excused for cause. Nonetheless, we are constrained by our Supreme Court's recent precedent to conclude that the trial court's failure to address the *Bone-Club* factors before conducting an in-chambers excusal of two potential jurors "for cause" was structural error warranting a new trial. As our Supreme Court recently explained:

> Structural error is a special category of constitutional error that "affect[s] the framework within which the trial proceeds, rather than simply an error in the trial process itself."[12] Where there is structural error "'a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair.'"[13] Structural error, including deprivation of the public trial right, is not subject to harmlessness analysis.[14] A defendant "should not be required to prove specific prejudice in order to obtain relief."[15] *Accordingly, unless the trial court considers the Bone–Club factors on the record before closing a trial to the public, the wrongful*

---

[12] *Arizona v. Fulminante*, 499 U.S. 279, 310, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991).

[13] *Fulminante*, 499 U.S. at 310 (quoting *Rose v. Clark*, 478 U.S. 570, 577-78, 106 S. Ct. 3101, 92 L. Ed. 2d 460 (1986) (citation omitted)).

[14] *Fulminante*, 499 U.S. at 309-10; *Easterling*, 157 Wn.2d at 181.

[15] *Waller v. Georgia*, 467 U.S. 39, 49, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984).

> *deprivation of the public trial right is a structural error presumed to be prejudicial.*

*Wise,* 176 Wn.2d at 13-14 (emphasis added). On this basis alone, the Supreme Court reversed Wise's conviction. *See also Paumier,* 176 Wn.2d at 35.

### III. SAG CHALLENGE TO SUFFICIENCY OF EVIDENCE

To the extent that Varnell's SAG challenges the sufficiency of evidence to support his escape conviction, this challenge fails. On appeal, we view the evidence in the light most favorable to the State. *State v. Drum,* 168 Wn.2d 23, 34, 225 P.3d 237 (2010). Both parties in their respective briefs on appeal set forth ample evidence to support Varnell's conviction such that retrial on remand will not constitute double jeopardy.

Holding that *Wise* requires us to reverse Varnell's conviction based on the *Bone-Club* error alone, we do not reach his other arguments. Accordingly, we reverse and remand for a new trial.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Hunt, P.J.

We concur:

Penoyar, J.

Bjorgen, J.

8