**FILED**
**JULY 8, 2025**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 39840-4-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MIGUEL ANGEL QUINTANILLA, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

COONEY, J. — Miguel Quintanilla appeals his convictions for assault in the second degree, felony harassment, and assault in the fourth degree, arguing: (1) an in-chambers meeting during voir dire, following which two jurors were dismissed without explanation, violated his right to a public trial; (2) the difference between the alleged date of the offenses contained in his information and the jury instructions allowed the jury to convict him of crimes for which he was not charged; (3) the prosecutor committed prejudicial misconduct; (4) his protection against double jeopardy was violated when the court entered convictions for both second and fourth degree assault; (5) his right to a jury trial was violated when the trial court included prior convictions in his offender score; and (6) legal financial obligations were improperly ordered.

We agree Mr. Quintanilla's right to a public trial was violated and reverse his convictions. Because the violation of his right to a public trial is dispositive, we decline review of his remaining assignments of error.

## BACKGROUND

In May 2022, Mr. Quintanilla's then girlfriend, X.B.-O.,[1] reported to a law enforcement officer that Mr. Quintanilla had assaulted her, damaged her property, and threatened to kill her if she reported the assaults. Mr. Quintanilla was subsequently charged with assault in the first degree, assault in the second degree, felony harassment, assault in the fourth degree, and malicious mischief in the third degree aforementioned crimes.

The case proceeded to a jury trial. During voir dire, the State requested an in-chambers meeting:

> [THE COURT]: . . . Before I turn it over to the lawyers for voir dire questions, I have some general questions.
>
> [THE STATE]: Your Honor, my apologies. I think we may need to see you in chambers. Something has just come to my attention I'd like to report.
>
> THE COURT: Okay. And, ladies and gentlemen, don't be particularly shocked or surprised. The one thing we know about these trials is unexpected things happen and they become expected almost at some point. So, we're gonna take a quick break. We're gonna get back on the

---

[1] We refer to the witness by her initials only unless necessary for the disposition of the issue.

record lickety-split, if that's a legal term. And, for a moment, why don't we go ahead and go off the record and we'll be back as soon as we can.

RECESS TAKEN

THE COURT: All right. Thank you, everyone for your patience. We do try and be respectful of your time. And, we try and get this process moving as much as we can.

So, all right. I need to excuse two jurors today. And, that would be Jurors Nos. 6 and 8. It's been decided that we will excuse Juror Nos. 6 and—yep, you're Juror No. 8 and 6. Don't worry. No one is any trouble. It's a very mysterious thing sometimes the way these courts work. Trust me when I say we can tell you anything you want to know after the conclusion of the trial. But, for today, I am required to tell you folks you're excused, 6 and 8, and if you wouldn't mind just setting your cards—oh, the Bailiff will take the cards. Mr. Munoz will take those. We do thank you both for your time in coming up today. We appreciate it very much. All right. And, don't—don't hesitate to call if you want to hear the—the whole gory detail on why.

Rep. of Proc. (RP) at 241-42.

The trial concluded with the jury finding Mr. Quintanilla not guilty of assault in the first degree and malicious mischief in the third degree, but guilty of assault in the second degree, felony harassment, and assault in the fourth degree. Mr. Quintanilla was later sentenced.

Mr. Quintanilla timely appeals.

ANALYSIS

Mr. Quintanilla argues his right to a public trial was violated when the attorneys and judge met in the judge's chambers before dismissing two jurors without explanation. We agree with Mr. Quintanilla and reverse.

3

Article I, section 22 of the Washington Constitution and the Sixth Amendment to the United States Constitution guarantee an accused the right to a public trial. *State v. Wise*, 176 Wn.2d 1, 9, 288 P.3d 1113 (2012). We review alleged violations of a defendant's public trial right de novo. *Id*.

"[N]ot every interaction between the court, counsel, and defendants will implicate the right to a public trial, or constitute a closure if closed to the public." *State v. Sublett*, 176 Wn.2d 58, 71, 292 P.3d 715 (2012); *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 28-29, 296 P.3d 872 (2013). Thus, the preliminary determination is whether the proceeding at issue implicates a defendant's public trial right. *Sublett*, 176 Wn.2d at 71.

The public trial right is implicated if the proceeding falls within a specific category of trial proceedings that our Supreme Court has already established implicates the public trial right. *State v. Wilson*, 174 Wn. App. 328, 335, 298 P.3d 148 (2013). If the proceeding does not fall into such a category, our Supreme Court has adopted a two-part "experience and logic" test to analyze whether the right is implicated. *Sublett*, 176 Wn.2d at 72. The two prongs of the test are: (1) whether the place and process have historically been open to the general public and the press (experience prong), and (2) whether the public's access plays a significant positive role in the functioning of the particular process in question (logic prong). *Wilson*, 174 Wn. App. at 335; *Sublett*, 176

Wn.2d at 73. Both the experience and logic test inquiries must be answered in the affirmative to implicate the public trial right. *Sublett*, 176 Wn.2d at 73.

If a defendant's public trial right is implicated, we next look to whether a closure occurred without a *Bone-Club*[2] analysis. *State v. Paumier*, 176 Wn.2d 29, 35, 288 P.3d 1126 (2012). A *Bone-Club* analysis consists of weighing five criteria:

> 1. The proponent of closure or sealing must make some showing [of a compelling interest], and where that need is based on a right other than an accused's right to a fair trial, the proponent must show a "serious and imminent threat" to that right.
>
> 2. Anyone present when the closure motion is made must be given an opportunity to object to the closure.
>
> 3. The proposed method for curtailing open access must be the least restrictive means available for protecting the threatened interests.
>
> 4. The court must weigh the competing interests of the proponent of closure and the public.
>
> 5. The order must be no broader in its application or duration than necessary to serve its purpose.

128 Wn.2d at 258-59. If a closure occurs without a *Bone-Club* analysis, the error is structural and warrants a new trial. *Paumier*, 176 Wn.2d at 35.

Mr. Quintanilla argues his right to a public trial was violated when the attorneys and judge met in the judge's chambers during voir dire, followed by the judge dismissing two jurors without explanation. It is undisputed that a *Bone-Club* analysis was not

---

[2] *State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995).

conducted. Thus, the questions are whether Mr. Quintanilla's right to a public trial was implicated and whether a closure occurred. We answer each question in the affirmative.

*Public Trial*

Our Supreme Court has explained that "[t]he guarantee of open proceedings extends in criminal cases to" the jury selection process. *State v. Strode*, 167 Wn.2d 222, 226, 217 P.3d 310 (2009). The Supreme Court has made clear that "'a closed jury selection process harms the defendant by preventing his or her family from contributing their knowledge or insight to jury selection and by preventing the venire from seeing the interested individuals.'" *Id.* at 227 (quoting *State v. Brightman*, 155 Wn.2d 506, 515, 122 P.3d 150 (2005)). Because our Supreme Court has determined a courtroom closure during voir dire implicates a defendant's public trial right, we need not proceed to the experience and logic test. Mr. Quintanilla's public trial right was implicated.

*Closure*

When "a trial court conducts a court proceeding in chambers, thus causing the public to be excluded, there is a closure." *State v. Whitlock*, 195 Wn. App. 745, 754-55, 381 P.3d 1250 (2016), *aff'd*, 188 Wn.2d 511, 396 P.3d 310 (2017). Here, the public was excluded from voir dire when the court held an in-chambers meeting, presumably about the fitness of jurors 6 and 8 to serve. When court reconvened, the judge dismissed jurors 6 and 8 without explanation, stating, "[i]t's a very mysterious thing sometimes the way these courts work. Trust me when I say we can tell you anything you want to know after

6

the conclusion of the trial." RP at 241. No explanation was given as to why jurors 6 and

8 were dismissed, and no record was made of what was discussed in chambers.

Because Mr. Quintanilla's public trial right was implicated and a courtroom

closure occurred during voir dire in the absence of a *Bone-Club* analysis, Mr.

Quintanilla's right to a public trial was violated. This is a structural error entitling

Mr. Quintanilla to a new trial.[3]

## CONCLUSION

We reverse Mr. Quintanilla's convictions and remand for a new trial.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Cooney, J.

WE CONCUR:

_____
Murphy, M.

_____
Staab, A.C.J.

---

[3] The State's primary argument is that Mr. Quintanilla did not object to the court closure. The State cites no authority for its contention that Mr. Quintanilla needed to object to preserve this issue, and our Supreme Court has noted that a defendant's failure to object does not waive the issue. *Bone-Club*, 128 Wn.2d at 257 ("We also note Defendant's failure to object contemporaneously did not effect a waiver.").