[No. 56175–3.   En Banc.   February 1, 1990.]

THE STATE OF WASHINGTON, *Respondent,* v. WILLIAM JAMES FOWLER, *Petitioner.*

*Mestel & Muenster,* by *John R. Muenster,* for petitioner (counsel for appeal only).

*Norm Maleng, Prosecuting Attorney,* and *Jeffrey Ramsdell, Deputy,* for respondent (counsel for appeal only).

DOLLIVER, J.—On November 6, 1978, Russell Verbon, his wife Jacqueline, and son Mark were driving down a 2–lane residential street in Seattle when they came across William J. Fowler's car blocking both lanes of traffic. Russell Verbon decelerated his car and waited for Fowler to proceed. When Fowler eventually did so, Russell Verbon attempted to pass him but was unsuccessful because he did not have enough room. Shortly thereafter, Fowler stopped his car in the middle of the road. He then got out of his car and pounded his fist abruptly on the hood of Russell Verbon's car.

Mark Verbon testified he got out of the backseat of the car but quickly jumped back in when he saw Fowler pull a gun out of a holster he was wearing. Russell Verbon testified he saw Fowler point a handgun at him as he put his car into reverse and began backing away. Jacqueline Verbon testified she saw Fowler reach for a gun in a holster, draw it out, and point it at her husband.

Fowler testified he was not "100 percent for sure" but "it's more than possible" he was carrying a .357 magnum in a shoulder holster that day. Fowler also testified if he was in fact carrying a gun it would have been visible as he began to take off his shirt in anticipation of a fight between himself and Mark Verbon. Fowler also admitted he was angry and that he slammed his fist on the hood of the Verbon car. Fowler testified at no time did he ever "pull a gun or point a gun" at anyone.

In 1973, Fowler was convicted on two felony charges, one involving a grand larceny conviction. Fowler's motion to exclude these prior convictions at trial was denied.

Fowler was tried and convicted of second degree assault with a special finding he was armed with a deadly weapon and a firearm. He appealed his conviction and alleged the trial court erred when it: (1) failed to instruct the jury the State had the burden of proving beyond a reasonable doubt the presence of a deadly weapon in fact; (2) overruled Fowler's objections to certain statements made by the prosecutor in her closing argument; (3) denied Fowler's motion to exclude his prior convictions; (4) failed to instruct the jury on the lesser included offense of unlawful display of a firearm; and (5) failed to define the term "unlawful force" in the jury instructions. The Court of Appeals in an unpublished opinion affirmed the trial court on all grounds. We affirm.

I

We turn first to the failure of the trial court to instruct the jury on the State's burden of proof in relation to the deadly weapon charge. According to RCW 9.95.040, the State must prove the presence of a deadly weapon *in fact* in order to permit a special finding that a defendant was armed with a deadly weapon. *State v. Pam,* 98 Wn.2d 748, 753, 659 P.2d 454 (1983), *overruled on other grounds in State v. Brown,* 111 Wn.2d 124, 143–44, 761 P.2d 588 (1988), *aff'd on rehearing,* 113 Wn.2d 520, 782 P.2d 1013 (1989). A defendant's penalty cannot be enhanced if the evidence establishes only that he was armed with a gunlike, but nondeadly, object. *Pam,* at 753. Furthermore, the trial court is required to instruct the jury it must find the defendant armed with a deadly weapon beyond a reasonable doubt. *State v. Tongate,* 93 Wn.2d 751, 754–56, 613 P.2d 121 (1980).

Since the trial court failed to instruct the jury on the State's burden of proof relative to the deadly weapon charge, it erred according to *Tongate.* What effect the trial

court's error should have is the issue presented to this court. We granted Fowler's petition for review mainly to answer this question.

This court has held an error infringing upon a defendant's constitutional rights is presumed prejudicial and that the State has the burden of proving the error was harmless beyond a reasonable doubt. *State v. Pam, supra* at 753; *State v. Stephens,* 93 Wn.2d 186, 191, 607 P.2d 304 (1980); *State v. Burri,* 87 Wn.2d 175, 182, 550 P.2d 507 (1976); *State v. Claborn,* 95 Wn.2d 629, 628 P.2d 467 (1981). A "harmless error" is one which is ""*trivial,* or *formal,* or *merely academic,* and was not prejudicial to the substantial rights of the party assigning it, and *in no way affected the final outcome of the case.*"" *Pam,* at 754 (quoting *State v. Wanrow,* 88 Wn.2d 221, 237, 559 P.2d 548 (1977)). This is the standard the Court of Appeals applied in affirming Fowler's conviction. However, this court has also held a failure to instruct on reasonable doubt constitutes reversible error per se. *In re Gunter,* 102 Wn.2d 769, 689 P.2d 1074 (1984). The apparent inconsistency of *Gunter* with *Pam* needs to be resolved.

In *Gunter,* the defendant was found guilty of second degree assault with a special finding he was armed with a deadly weapon or firearm. *Gunter,* at 771. The trial court failed to instruct the jury on the State's burden of proof in relation to the deadly weapon special verdict. *Gunter,* at 771. In holding the trial court's error reversible per se, the court reasoned:

> In *State v. Cox,* 94 Wn.2d 170, 174, 615 P.2d 465 (1980), the court expressly held failure to instruct on reasonable doubt is per se reversible error:
>
>> The function of informing the jury of the reasonable doubt standard can only be achieved by a specific instruction. Therefore when, as in the *McHenry* [*State v. McHenry,* 88 Wn.2d 211, 558 P.2d 188 (1977)] case, the jury instructions fail to include a specific instruction on reasonable doubt, the omission is per se reversible error.

*Gunter,* at 774.

In *State v. Cox*, 94 Wn.2d 170, 615 P.2d 465 (1980), the defendant was charged with and convicted of second degree burglary. *Cox*, at 172. The trial court instructed the jury on the State's burden to prove each element of the crime against defendant beyond a reasonable doubt. *Cox*, at 172. The court also instructed the jury on the presumption of innocence. *Cox*, at 172. However, the court failed to give the standard instruction informing the jury that the burden of proof in a criminal case is upon the State. *Cox*, at 173. In affirming the defendant's conviction, this court applied a totality of the circumstances approach and evaluated the instructions as a whole in order to determine the harmful effect of omitting the instruction. *Cox*, at 175.

By applying a totality of the circumstances approach in *Cox*, we specifically rejected the reversible per se standard developed in *State v. McHenry*, 88 Wn.2d 211, 558 P.2d 188 (1977), where not only did the trial court fail to instruct the jury on the State's burden of proof, it also failed to instruct on reasonable doubt or the presumption of innocence. *McHenry*, at 212.

Unlike *McHenry*, *Gunter* did not entail a complete failure to instruct on reasonable doubt. From the reasonable doubt instruction which was given, the jury could have inferred that the same standard should apply to the deadly weapon special verdict as well.

■ For this reason, we hold where no reasonable doubt instruction is given at all, as in *McHenry*, such an error is reversible per se. However, in cases where the jury is instructed at least once on the State's burden of proof in a criminal case, the omission of further instruction where required shall be analyzed by looking at whether the error was harmless beyond a reasonable doubt. Although *Tongate* requires the trial court to instruct the jury on the State's burden of proof in relation to the deadly weapon special verdict, an across–the–board application of the *McHenry* standard in cases where the instruction is inadvertently omitted would only lead to retrial of cases where

there is no doubt the jury would have reached the same result had it been properly instructed.

In this case, the court did instruct the jury once on reasonable doubt, although not specifically on the deadly weapon charge. Therefore, the court's instructional error should be analyzed according to whether the error was harmless beyond a reasonable doubt. Based on the testimony of the Verbons and Fowler, it is clear the instructional error was harmless. The jury was instructed the State had the burden of proving beyond a reasonable doubt Fowler was guilty of second degree assault. See instructions 2 and 3. From the evidence and testimony presented at trial, the jury could only find Fowler guilty of assault if it also found he was armed at the time of the incident. Although Fowler alleges the jury may have concluded he committed an assault when he slammed his fist on the hood of the Verbon car, no evidence or testimony to support this theory was developed at trial. Fowler either committed an assault with a weapon or he did not commit an assault at all.

Furthermore, Fowler himself testified he owned a .357 magnum and that it was "more than possible" he was carrying it on this particular day. The Verbons all testified they saw Fowler draw the gun as he stood next to their car. Based on the overwhelming evidence from both sides regarding the gun, Fowler would have been found armed with a deadly weapon beyond a reasonable doubt even if the jury had been properly instructed. The error was harmless beyond a reasonable doubt.

## II

We examine next the impropriety of certain statements the prosecutor made in her closing argument to the jury. The prosecutor stated:

> There is one further thing I think you should ask yourselves. In this case, the State has the burden of proof in a criminal charge and the State welcomes that burden in this case. I think you will find the State has met that burden, but anyone can

call and subpoena witnesses, and I think you should ask yourselves there is testimony by all three of the Verbons as to another person in the defendant's car. If the defendant's story is true and if he had a friend in his car, who presumably observed much of this event, where is that person?

Verbatim Report of Proceedings, at 115–16.

After the jury left the room, Fowler's counsel objected to the prosecutor's argument on the grounds that it shifted the burden of proof in the case from the State to Fowler. The trial court overruled the objection as untimely. Fowler requests for the first time on appeal that a mistrial be granted based on the allegedly inappropriate statements.

■ If defense counsel does not object, move for mistrial, or request a curative instruction, then a prosecutor's allegedly improper argument cannot be urged as error on appeal "'unless the comments constitute prosecutorial misconduct so flagrant and ill intentioned that no curative instruction could have obviated the prejudice they engendered.'" *State v. Dunaway*, 109 Wn.2d 207, 221, 743 P.2d 1237, 749 P.2d 160 (1987) (quoting *State v. Kendrick*, 47 Wn. App. 620, 638, 736 P.2d 1079, *review denied*, 108 Wn.2d 1024 (1987)). In *Dunaway*, the defendant objected on appeal to the prosecutor's closing remarks to the jury because they were delivered "'with a tearful quiver in his voice'". *Dunaway*, at 220. The court refused to grant a new trial because defendant had ample opportunity to object before the jury retired but failed to do so. *Dunaway*, at 221.

The prosecutor, by arguing evidence not at issue at Fowler's trial, committed an error which we consider highly inappropriate and contrary to the standards to which we hold members of the bar. However, the statements were not so "flagrant and ill intentioned" as to warrant a mistrial in this case. A curative instruction, had one been properly requested in a timely fashion, would have been sufficient to remedy any damage the prosecutor's statements may have caused. Fowler's counsel had ample opportunity to make a timely objection to the statements but failed to do so. The

statements do not rise to the requisite level of prosecutorial misconduct as set forth in *Dunaway.*

## III

■ We examine next whether Fowler was entitled to an instruction on the lesser included offense of unlawful display of a firearm. An instruction on a lesser included offense will be given when each element of the lesser included offense must be a necessary element of the offense charged, and when the evidence in the case supports an inference that the lesser included crime was committed. *State v. Workman,* 90 Wn.2d 443, 447–48, 584 P.2d 382 (1978).

The State concedes unlawful display of a weapon is a lesser included offense of second degree assault with a deadly weapon. The issue is whether there was adequate evidence to support an inference the lesser included crime was committed. RCW 9.41.270(1) defines unlawful display of a weapon as follows:

> It shall be unlawful for anyone to carry, exhibit, display or draw any firearm . . . in a manner, under circumstances, and at a time and place that either manifests an intent to intimidate another or that warrants alarm for the safety of other persons.

Fowler did not offer evidence at trial which would support a theory he intended to intimidate the Verbons with his gun or that he displayed his gun in a manner which would cause the Verbons alarm. Instead, his testimony only addressed whether he had a gun at all, and if he did, whether it would have been visible as he began to remove his shirt. This testimony served merely to discredit the Verbons' testimony rather than support an instruction on the lesser included offense. It is not enough that the jury might simply disbelieve the State's evidence. Instead, some evidence must be presented which affirmatively establishes the defendant's theory on the lesser included offense before an instruction will be given. *State v. Rodriguez,* 48 Wn. App. 815, 820, 740 P.2d 904, *review denied,* 109 Wn.2d 1016

(1987). None was presented; Fowler was not entitled to an instruction on the lesser included offense.

## IV

The next issue is whether the trial court erred by allowing Fowler's prior convictions to be taken into consideration at trial. Former ER 609(a), in effect at the time of trial, states:

> For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross examination but only if the crime (1) was punishable by death or imprisonment in excess of 1 year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment.

In *State v. Alexis*, 95 Wn.2d 15, 621 P.2d 1269 (1980), we listed some of the factors a trial court should consider in weighing the value of the credibility against potential prejudice. They include: (1) the length of the defendant's criminal record; (2) remoteness of the prior conviction; (3) nature of the prior crime; (4) the age and circumstances of the defendant; (5) centrality of the credibility issue; and (6) the impeachment value of the prior crime. *State v. Alexis, supra* at 19. The trial court must state, for the record, the factors which favor admission or exclusion of prior conviction evidence. *State v. Jones,* 101 Wn.2d 113, 123, 677 P.2d 131 (1984).

The Court of Appeals points out the record on review does not include the making and denial of the defendant's motion in limine to have his prior convictions excluded. *See State v. Fowler,* slip op., at 9 n.3, unreported opinion noted at 54 Wn. App. 1009 (1989). Nonetheless, the Court of Appeals granted review because a determination of the issue could be made from the record as a whole. *State v. Bond,* 52 Wn. App. 326, 333, 759 P.2d 1220 (1988).

The State concedes it has the burden of showing the probative value of the evidence outweighs any prejudice. There is ample evidence to show the State has met this burden. First, Fowler's credibility was at the center of the

case against him. The jury essentially had to decide whose testimony was more credible. The prior convictions could help the jury make this assessment. Second, Fowler admitted the convictions on direct examination. The prosecutor did not refer to the convictions either during cross examination or during her closing argument. Additionally, the court instructed the jury to consider the convictions only in deciding what weight or credibility to give Fowler's testimony. See instruction 9. Finally, the prior convictions were completely unrelated to the second degree assault charge in this case; therefore, the jury could not have inferred from the prior convictions that Fowler was merely repeating crimes for which he had already been convicted in the past. The trial court did not err by allowing Fowler's prior convictions to be considered at trial.

## V

■ The last issue is whether the trial court's instruction defining assault as an intentional act with "unlawful force" may be challenged on vagueness and overbreadth grounds for the first time on appeal.

> Exceptions to the failure of the trial court to give an instruction must clearly apprise the trial judge of the points of law involved. Where the exception and the discussion of it does not do so, points of law or issues involved will not be considered on appeal.

*Seattle v. Rainwater,* 86 Wn.2d 567, 571, 546 P.2d 450 (1976). Although Fowler did take exception to the assault instruction proposed by the court, his exception did not involve the potential vagueness or overbreadth of the court's definition of the term "unlawful force". His objection cannot be raised for the first time on appeal.

■ Fowler argues in the alternative that he can raise a vagueness or overbreadth objection to the instruction for the first time on appeal since such error is of constitutional magnitude. However, in *State v. Scott,* 110 Wn.2d 682, 689, 757 P.2d 492 (1988), this court held the constitution only requires the jury be instructed as to each element of the offense charged, and the failure of the trial court to further define one of those elements is not within the ambit of the

constitutional rule. Since the trial court did instruct the jury as to each element of second degree assault, it met its constitutionally mandated requirement. Fowler has not raised an issue of constitutional magnitude to this court.

The Court of Appeals is affirmed.

CALLOW, C.J., UTTER, BRACHTENBACH, DORE, DURHAM, and SMITH, JJ., and PEARSON, J. Pro Tem., concur.

ANDERSEN, J., concurs in the result.