# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 67649-1-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| DAVID CAMPBELL COPELAND, | ) | |
| | ) | |
| Appellant. | ) | FILED: April 22, 2013 |

GROSSE, J. — A lesser included offense instruction should be given if the evidence supports an inference that only the lesser offense was committed. Here, the State charged David Copeland with felony harassment, which requires a threat to kill and a reasonable belief that the threat will be carried out. Because a jury could have inferred from the evidence that Copeland threatened and the victim feared bodily injury, the trial court did not err by instructing the jury on the lesser included offense of gross misdemeanor harassment. We affirm the judgment and sentence.

## FACTS

The State charged David Copeland with second degree assault (domestic violence) and felony harassment (domestic violence) for an incident on February 16, 2011, involving his girlfriend, Shawna McCormack. McCormack and Copeland began dating in 2007. According to McCormack, their relationship was "really good" until the end of 2008, when Copeland became abusive.

McCormack testified to several instances of violence between her and Copeland.[1] According to McCormack, in December 2008, Copeland grabbed her around the neck and pushed her "really hard" while they were arguing. Then, in December 2009, Copeland banged her head against the dashboard of his car. A year later, Copeland kicked McCormack in the ribs so hard that she flew off their bed. McCormack also testified that a day before the charged incident, Copeland told her he was going to kill her and her family.[2] The morning of the incident, McCormack said that Copeland yelled at her that he was going to kill her family and "put her in a ditch." McCormack did not say whether she took these threats seriously.

Regarding the charged incident, McCormack testified that she and Copeland had dinner at home that evening with their one-year-old daughter, Mary Margaret, and McCormack's seven-year-old daughter, Riley. Around 9:00 p.m., Copeland became angry after McCormack asked whether he would attend a meeting in Burien. According to McCormack, she and Copeland began arguing, and Copeland told Riley to leave the room. Copeland then approached the chair where McCormack sat holding Mary Margaret and grabbed McCormack by the throat. McCormack said that he "kept pushing hard" until the chair fell

---

[1] The trial court admitted this evidence for the limited purposes of (1) determining whether McCormack was placed in reasonable fear that the charged threat would be carried out and (2) assessing McCormack's state of mind and credibility.

[2] This threat was recorded on McCormack's sister's voicemail. An officer who heard the voicemail testified that Copeland said, "I can take you, I can take your fucking life."

2

backward. Copeland picked McCormack up and began choking her again, but then left the house suddenly.

After Copeland left, McCormack locked the doors to the house out of concern for her safety and called her sister, Julie. While McCormack was explaining what had occurred, Copeland returned and began banging on the doors. McCormack asked Julie to come over but not to call the police because she would "get in trouble." Copeland kicked in the door and entered the bedroom, where McCormack was on the phone. McCormack testified that Copeland picked up a pillow and moved toward her saying, "I'll take your last breath."

In the following exchange, the prosecutor asked McCormack what she had been thinking when Copeland threatened her:

> Q: . . . [S]o he had a pillow, he was in your bedroom, and he was threatening to take your last breath?
> A: Yeah.
> Q: Did you believe him?
> A: Yes, more than ever.
> Q: Well, why, though, because he didn't kill you earlier.
> A: No, he didn't, but I . . . just -- I really thought he was -- I mean, I was afraid he was going to kill me for quite a while, actually, that's why I didn't leave before.
> Q: Okay.
> A: But I just -- I really thought that was it and I just --
> Q: What was going through your mind?
> A: I was thinking, I wish I would have actually had my sister call the police, but then -- then all of a sudden there was a knock at the door, it was the police.

McCormack said that she felt grateful when she saw the police because "I really was so happy that I wasn't dead. . . . I think they saved my life."

3

During cross-examination, McCormack admitted that she did not mention in her statement to police that Copeland had threatened to "take [her] last breath." Nor was that statement contained in the police report.

Deputy Scott Mandella of the King County Sheriff's Office was dispatched to McCormack's house the night of the incident. When he arrived, he talked to McCormack, who was "sobbing, crying, and her breathing was irregular, and her speech was choked." McCormack told Mandella, "I'm scared he's going to kill me." Mandella said that this statement "came out with a whole lot of emotion behind it." Detective Andrew Skaar, another officer on the scene, said McCormack told him that Copeland threatened to "end her and her family."

After both parties rested, Copeland objected to the State's proposed lesser included offense instruction on gross misdemeanor harassment. The trial court ruled that sufficient evidence supported giving the instruction and included it in the instructions to the jury. The jury acquitted Copeland of second degree assault and felony harassment but found him guilty of the lesser included offense.

Copeland appeals.

ANALYSIS

Lesser Included Offense Instruction

Copeland contends the trial court erred by instructing the jury on the lesser included offense of misdemeanor harassment. A party has a statutory right to jury instructions on a lesser include offense if (1) each of the elements of

the lesser offense is a necessary element of the offense charged (legal prong) and (2) the evidence supports an inference that the lesser crime was committed (factual prong).[3] Under the factual prong, we consider all the evidence presented in the light most favorable to the requesting party.[4] "The evidence must raise an inference that only the lesser included/inferior degree offense was committed to the exclusion of the charged offense."[5] The requesting party must point to affirmative evidence of the lesser offense; "[i]t is not enough that the jury might simply disbelieve the State's evidence."[6] Where, as here, the factual prong is in dispute, we review the trial court's decision for an abuse of discretion.[7]

Because the parties concede that the legal prong is met, the question is whether there was affirmative evidence that misdemeanor harassment was committed to the exclusion of felony harassment. A person is guilty of harassment when he or she unlawfully threatens another and the person threatened reasonably fears that the threat will be carried out.[8] The difference between misdemeanor harassment and felony harassment lies in the threat.[9] Harassment is elevated from a misdemeanor, which requires a threat of bodily

---

[3] RCW 10.61.006; State v. Stevens, 158 Wn.2d 304, 310, 143 P.3d 817 (2006).
[4] State v. Fernandez-Medina, 141 Wn.2d 448, 455-56, 6 P.3d 1150 (2000).
[5] Fernandez-Medina, 141 Wn.2d at 455.
[6] State v. Fowler, 114 Wn.2d 59, 67, 785 P.2d 808 (1990).
[7] State v. Brightman, 155 Wn.2d 506, 519, 122 P.3d 150 (2005); see also State v. Hunter, 152 Wn. App. 30, 43-44, 216 P.3d 421 (2009), review denied, 168 Wn.2d 1008, 226 P.3d 781 (2010).
[8] RCW 9A.46.020.
[9] RCW 9A.46.020(1), (2).

5

harm, to a felony when a defendant threatens to kill.[10] The threat made and the threat feared must be the same.[11]

McCormack testified that Copeland approached her with a pillow and threatened to take her last breath. She said that she was afraid that Copeland was going to kill her. The jury also heard that Copeland had threatened to kill McCormack in the past and that he had injured her on several prior occasions. From this evidence, a jury could infer that on the night of the incident, Copeland threatened to injure McCormack and that McCormack feared bodily injury. A jury thus could have rationally found Copeland guilty of gross misdemeanor harassment and acquitted him of felony harassment. The trial court did not err by instructing the jury on the lesser included offense.

Evidence of Prior Incarceration

Before trial, the court granted Copeland's motion in limine to exclude evidence that he had been in jail just before the charged incidents occurred.[12] Nevertheless, Riley testified that she began to call Copeland "dad" "when he came back from jail." The trial court instructed the jury to disregard her comment. McCormack then testified that she decided to end the relationship "during the 60 days in which [Copeland] . . . was not there." And in closing argument, the prosecutor stated, "If there's anything good that came out of this last assault, it's that they lived apart for a couple of months after that." After each

_____

[10] State v. Mills, 154 Wn.2d 1, 12, 109 P.3d 415 (2005).
[11] State v. C.G., 150 Wn.2d 604, 609, 80 P.3d 594 (2003).
[12] Copeland had been in jail for 60 days on drug-related charges.

comment, Copeland moved for a mistrial. The trial court declined to grant a mistrial, explaining: "I do not believe that the information regarding the parties being apart necessarily connects this defendant with jail. And secondly, I don't believe that the inference that could be drawn concerning confinement is so prejudicial that this would -- deprives [sic] the defendant of a fair trial."

Copeland contends that the trial court erred by declining to grant a mistrial. A trial court's denial of a motion for a mistrial is reviewed under an abuse of discretion standard and should only be granted where a "defendant has been so prejudiced that nothing short of a new trial can insure that the defendant will be tried fairly."[13] In determining whether a trial irregularity deprived a defendant of a fair trial, a court considers: (1) the seriousness of the irregularity; (2) whether challenged evidence was cumulative of the properly admitted evidence; and (3) whether the irregularity could be cured by an instruction to disregard the remark, an instruction which it is presumed a jury follows.[14] Because the trial court is in the best position to most effectively determine whether a defendant's right to a fair trial has been prejudiced, we give the trial court's ruling deference on appeal.[15]

Here, the only direct reference to the fact that Copeland had been in jail was Riley's testimony. That comment was cured by the trial court's instruction to

---

[13] State v. Lewis, 130 Wn.2d 700, 707, 927 P.2d 235 (1996).
[14] State v. Babcock, 145 Wn. App. 157, 163, 185 P.3d 1213 (2008) (citing State v. Escalona, 49 Wn. App. 251, 254, 742 P.2d 190 (1987)).
[15] State v. Luvene, 127 Wn.2d 690, 701, 903 P.2d 960 (1995).

the jury to completely disregard it. Copeland has not demonstrated that the other indirect references to Copeland's incarceration were so prejudicial as to warrant a new trial. The trial court's denial of Copeland's motion for a mistrial was not an abuse of its discretion.

We affirm the judgment and sentence.

WE CONCUR: