

FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2014 NOV 24 AM 9: 33

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 72430-4-I |
| Respondent, | ) ) | |
| | ) | DIVISION ONE |
| v. | ) ) | UNPUBLISHED OPINION |
| DRAKE MICHAEL MCDANIEL, | ) ) | |
| Appellant. | ) ) | FILED: November 24, 2014 |

TRICKEY, J. — Drake McDaniel appeals from the judgment entered on a jury's verdict finding him guilty of first degree robbery and first degree unlawful possession of a firearm. He contends that (1) the trial court erred by declining to instruct the jury on a lesser included offense to first degree robbery and (2) his constitutional right to a public trial was violated. Finding no error, we affirm.

## FACTS

On April 24, 2012, Jazmyne Montgomery drove Donteise Mosely to a Walgreen's parking lot and parked next to a Cadillac. Mosely had arranged to sell marijuana to a man named Budha. He stored the marijuana in a lunch box in the trunk of Montgomery's vehicle. Mosely also placed a smaller bag of marijuana in the glove compartment.

McDaniel exited the Cadillac and entered the rear passenger's side of Montgomery's vehicle. Mosely did not recognize McDaniel, who had identified himself as "YB."[1] Mosely and McDaniel shared a marijuana cigarette.

---

[1] 3 Report of Proceedings (RP) at 239.

Mosely showed McDaniel the small bag of marijuana from the glove compartment. Shortly thereafter, McDaniel pointed a gun at Mosely and said that he was robbing him.

At around the same time, another man—later identified as Jonathan Williams—emerged from the passenger's side of the Cadillac. Williams opened the driver's side door where Montgomery was sitting and pressed what Montgomery believed to be a gun against her hip. Williams ordered Montgomery to look away from him. Mosely testified he could see Williams pushing Montgomery against the car frame and holding what appeared to be a black pistol.

Mosely gave McDaniel the bag of marijuana and unlatched the trunk from the inside of the vehicle. McDaniel removed the keys from the vehicle's ignition and took Montgomery's purse. McDaniel then went to the trunk to remove the lunch box containing marijuana. McDaniel and Williams drove away in the Cadillac.

McDaniel was soon arrested, and the State charged him with two counts of robbery in the first degree (counts I and II) and unlawful possession of a firearm in the first degree (count III). Count I concerned the robbery of Montgomery's property.

McDaniel testified at trial. When asked why Williams was standing next to the driver's side window during the incident, McDaniel responded that Williams was simply greeting Mosely and Montgomery. McDaniel also testified that Mosely pointed a gun at him after discovering that he had used counterfeit bills to pay for the marijuana. According to McDaniel, at that point, Williams went to the driver's side window to ascertain what was occurring inside the vehicle. When he saw Mosely with a gun in hand, Williams made a gesture intimating that he had a gun. McDaniel denied seeing Williams with a firearm, however, during the incident. He also denied using force to take Montgomery's purse.

2

Defense counsel presented the theory that McDaniel committed theft, and not first degree robbery, because McDaniel did not use or threaten to use force when taking Montgomery's property. Accordingly, defense counsel proposed that the jury be instructed on third degree theft as a lesser offense of first degree robbery as charged in count I. The trial court denied defense counsel's request.

A jury convicted McDaniel of first degree robbery, as charged in count I, and first degree unlawful possession of a firearm, as charged in count III. The jury found McDaniel not guilty of first degree robbery of marijuana as charged in count II.

McDaniel appeals.

ANALYSIS

Jury Instructions

McDaniel first contends that the trial court erroneously declined to instruct the jury on third degree theft as a lesser included offense of first degree robbery. We disagree.

Washington statutes provide that a defendant charged with an offense has an "'unqualified right'" to have the jury pass on a lesser included offense if there is "'even the slightest evidence'" that he may have committed only that offense. State v. Parker, 102 Wn.2d 161, 163-64, 683 P.2d 189 (1984) (quoting State v. Young, 22 Wash. 273, 276-77, 60 P. 650 (1900)). A two-pronged test is applied to determine when a lesser included offense instruction must be given: First, each element of the lesser included offense must be a necessary element of the offense charged (the legal prong) and, second, the evidence in the case must support an inference that the lesser included crime was committed (the factual prong). State v. Workman, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978).

3

Here, there is no dispute as to the legal prong. The State contends, however, that the evidence does not support the factual prong. Consequently, only the factual prong is at issue here.

We review a decision on the factual prong for abuse of discretion. State v. LaPlant, 157 Wn. App. 685, 687, 239 P.3d 366 (2010). To satisfy the factual prong, some evidence must be presented that affirmatively establishes the defendant's theory on the lesser included offense. State v. Fowler, 114 Wn.2d 59, 67, 785 P.2d 808 (1990) (citing State v. Rodriguez, 48 Wn. App. 815, 820, 740 P.2d 904, review denied, 109 Wn.2d 1016 (1987)), overruled on other grounds by State v. Blair, 117 Wn.2d 479, 816 P.2d 718 (1991). When determining whether the evidence at trial supported the giving of an instruction, we view the supporting evidence in the light most favorable to the party that requested the instruction. State v. Fernandez-Medina, 141 Wn.2d 448, 455-56, 6 P.3d 1150 (2000).

As previously mentioned, McDaniel asserted the theory at trial that he committed theft, not robbery, because he did not use or threaten to use force when taking Montgomery's property. "Theft" means "[t]o wrongfully obtain or exert unauthorized control over the property or services of another or the value thereof, with intent to deprive him or her of such property or services." RCW 9A.56.020(1)(a). A person is guilty of third degree theft if he or she commits theft of property that does not exceed $750 in value. RCW 9A.56.050(1)(a).

The essential elements of first degree robbery, under the to-convict instructions provided here, included: (1) unlawfully taking property from Montgomery; (2) acting with intent to commit theft of the property; (3) committing the taking "against the person's will

4

by the defendant's or an accomplice's use or threatened use of immediate force, violence or fear of injury to that person;" (4) and using "force or fear . . . to obtain or retain possession of the property or to prevent or overcome resistance to the taking" of that property.[2] Thus, the primary distinction between third degree theft and first degree robbery as charged here was whether McDaniel or Williams used or threatened to use force during the commission of the crime.

Here, McDaniel has failed to demonstrate that the evidence affirmatively supported the inference that he committed third degree theft. To support his argument, he relies on his own testimony at trial, where he denied possessing a gun, denied seeing Williams with a gun, and denied using force while taking Montgomery's purse. But additional evidence adduced at trial showed that Williams, as an accomplice, threatened to use force during the crime. Montgomery testified that Williams had pressed a gun against her while McDaniel seized her purse and keys. Mosely corroborated Montgomery's testimony by describing his observation of Williams holding a gun against Montgomery during the robbery. Indeed, McDaniel testified that when he saw Williams gesture toward his waist, he "believed that either [Williams] had a gun or he was trying to make the impression that he had a gun."[3] The evidence did not affirmatively establish that no force or threat of force was used during the commission of the crime. McDaniel fails to establish that a lesser included offense instruction was appropriate. The trial court did not abuse its discretion.

---

[2] Clerk's Papers at 62; RCW 9A.56.190.
[3] 6 RP at 636.

5

Public Trial Right

McDaniel next contends that his constitutional right to a public trial was violated[4] when the trial court failed to conduct a Bone-Club[5] analysis before directing trial counsel to exercise peremptory challenges in writing and during a side bar discussion, which, he argues, constituted a closure.

During jury selection, counsel exercised their peremptory challenges by indicating the jurors they wished to excuse on a written form. This process was not reported by the court reporter, as the record indicates:

> (Peremptory challenges exercised.)
>
> THE COURT: Counsel.
> (Side bar held which was not reported.)[6]

However, the peremptory challenges were held while court was in session and while the courtroom was accessible to the public. After receiving the written form, the trial court announced, and the reporter recorded, the selected jurors and excused the remaining prospective jurors. Later that day, the trial court filed the written form listing the jurors excused by counsel's peremptory challenges.

Washington appellate courts have repeatedly rejected this argument and similar ones. State v. Webb, ___ Wn. App. ___, 333 P.3d 470 (2014); State v. Dunn, 180 Wn. App. 570, 321 P.3d 1283 (2014); State v. Love, 176 Wn. App. 911, 309 P.3d 1209 (2013), petition for review filed, No. 89619-4 (Wash. Nov. 21, 2013). We decline to depart from those decisions here. The trial court committed no error.

---

[4] The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington State Constitution guarantee a defendant's right to a public trial.
[5] State v. Bone-Club, 128 Wn.2d 254, 906 P.2d 325 (1995).
[6] RP (Jury Voir Dire) at 26.

Affirmed.

Trickey, J

WE CONCUR:

_Schindler, J_       Cox, J.