FILED
OCT 29, 2015
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 26476-9-III |
| | ) | Consol. w/ No. 27294-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ANTHONY PARKS, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |
| | ) | |
| | ) | |
| In re Personal Restraint Petition of: | ) | |
| | ) | |
| ANTHONY PARKS, | ) | |
| | ) | |
| Petitioner. | ) | |

BROWN, J. — Anthony Parks appeals his second degree rape conviction as a lesser included offense of first degree rape. He contends his right to a public trial was violated when the trial court swore in the venire in the jury assembly room. In his statement of additional grounds for review (SAG), Mr. Parks alleges the testimony did not fit the charged crime. In his consolidated personal restraint petition (PRP), he alleges error in instructing on the lesser included offense. We affirm and dismiss Mr. Parks' PRP.

No. 26476-9-III cons. w/ 27294-0-III
*State v. Parks* cons. w/ *In re PRP of Parks*

FACTS

On the evening of March 26, 2007, J.M. called the police to report she had been raped. J.M. told the responding police officer Trevor Nollmeyer the man who raped her had stolen some money and condoms from her immediately after the rape. During Officer Nollmeyer's interview, J.M. noticed Mr. Parks riding by on a bicycle and told Officer Nollmeyer that bicyclist was the rapist. Officer Nollmeyer brought J.M. to the hospital. Mr. Parks was arrested and charged with first degree rape.[1]

Before voir dire, the court apparently[2] swore in the venire and gave the venire questionnaires in the jury assembly room because the venire would not fit in the courtroom. Mr. Parks agreed to the process. Nothing in the record shows whether the door to the jury assembly room was open or closed during this process or if any members of the press or public requested or were denied access to the process. General voir dire then occurred in open court, and the juror's oath was administered in open court.

At trial, J.M. testified Mr. Parks walked up to her on the street and asked if she was working. After she answered no, he grabbed her, threatened to hurt her if she said

---

[1] Mr. Parks was charged and acquitted of first degree robbery and the lesser included offense of second degree robbery.

[2] The sole indication of this in the record is the following statement by the court:

There is a large jury panel. We probably can't get them all in the courtroom at any one time. And I would propose that – I would ask if you have any objection to me swearing the jury in the jury assembly room and handing them a questionnaire regarding their history of involvement in sexual abuse. . . . (Pause in proceeding.)

2

anything, and pulled her up a nearby driveway. J.M. testified Mr. Parks held a six-inch butcher knife to her throat, but she pushed it away, cutting herself. Once in a secluded area, Mr. Parks threw her down, pulled her pants down with his foot, and told her he would kill her if she moved. He then raped her, again threatened her, took money and condoms from her purse, and left.

Emergency room nurse Jennifer Sanford and Dr. Tiffany Kuehl testified. Ms. Sanford examined J.M. at the hospital. She noted J.M. had a cut on her hand and bruising to her ankle and leg. Dr. Kuehl's examination revealed abdominal tenderness and bruising, tenderness and physical debris in the vaginal area, bruising on J.M.'s right leg and ankle, and a cut on J.M.'s left hand.

During the State's direct examination, Dr. Kuehl testified her medical findings were consistent with forcible intercourse. Mr. Parks testified he had approached J.M. that night. J.M. led him to believe she was a working prostitute, and they engaged in consensual sex in exchange for $30. He denied having a knife. No knife was ever found.

The State proposed instructing the jury on second degree rape as well as on the charged crime of first degree rape. Over Mr. Parks' objection, the court submitted the lesser included offense instruction to the jury.

Report of Proceedings (RP) at 1.

The jury found Mr. Parks not guilty of first degree rape but guilty of the lesser included offense of second degree rape. Mr. Parks appealed.[3]

ANALYSIS

A. Public Trial

The issue is whether the trial court violated Mr. Parks' right to a public trial by swearing in the venire in the jury assembly room. He contends the court impermissibly closed a portion of "jury selection" when it swore in the venire in the jury assembly room not accessible to the public without conducting a *Bone-Club*[4] analysis.

A criminal defendant has a right to a public trial as guaranteed by both the federal Constitution and the Washington Constitution. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. Defendants can raise claims of public trial rights violations for the first time on appeal. *State v. Wise*, 176 Wn.2d 1, 9, 288 P.3d 1113 (2012). "In general, this right requires that certain proceedings be held in open court unless application of the five-part [*Bone-Club* test] supports closure of the courtroom." *State v. Miller*, 184 Wn. App. 637, 641, 338 P.3d 873 (2014). We review de novo whether a courtroom closure violated a defendant's right to a public trial. *Id.* at 641-42.

In analyzing an alleged public trial violation, we must first determine whether the proceeding at issue implicates the right. *Id.* at 642. While the public trial right has been extended to pretrial phases such as suppression hearings, hearings on motions to

---

[3] This court stayed Mr. Parks' appeal to await Supreme Court public trial decisions. The parties then filed supplemental briefing.

[4] *State v. Bone-Club*, 128 Wn.2d 254, 258-59, 906 P.2d 325 (1995).

sever, and voir dire, "not every interaction between the court, counsel, and defendants will implicate the right to a public trial or constitute a closure if closed to the public." *State v. Sublett*, 176 Wn.2d 58, 71, 292 P.3d 715 (2012); *see State v. Njonge*, 181 Wn.2d 546, 553, 334 P.3d 1068 (2014). A defendant asserting a violation of his public trial rights bears the burden of showing a closure occurred. *Njonge*, 181 Wn.2d at 556.

Courts employ a two-step process to determine whether a court closure occurred implicating the public trial right. *Miller*, 184 Wn. App. at 642. In the first step, we "consider whether the particular proceeding at issue 'falls within a category of proceedings that [the Washington] Supreme Court has already acknowledged implicates a defendant's public trial right.'" *Id.* (quoting *State v. Wilson*, 174 Wn. App. 328, 337, 298 P.3d 148 (2013)). If not, then we use the experience and logic test to determine whether a proceeding implicates the right. *Id.* Mr. Parks' public trial contention fails because: (1) he has not demonstrated a closure occurred, (2) such action at issue is not within the category of proceedings the Washington Supreme Court has already acknowledged implicates the public trial right, and (3) the court's action does not satisfy the experience and logic test.

Preliminarily, we cannot definitively say Mr. Parks showed a closure occurred. We "will not, for the purpose of finding reversible error, presume the existence of facts as to which the record is silent." *State v. Jasper*, 174 Wn.2d 96, 124, 271 P.3d 876 (2012) (quotation omitted). On this record, nothing shows spectators were totally excluded from the swearing on of the venire. Nothing shows whether the door to the

jury assembly room was open or closed. However, without deciding whether a closure occurred, Mr. Parks' public trial right was still not violated, as detailed below.

Swearing in of a venire is not yet acknowledged as implicating a defendant's public trial right. While the Washington Supreme Court has repeatedly held the public trial right applies to jury selection, mere labeling of a proceeding is not determinative. *State v. Slert*, 181 Wn.2d 598, 604, 334 P.3d 1088 (2014). Existing Washington case law addresses the public trial right in the context of a specific component of jury selection—voir dire. *Wilson*, 174 Wn. App. at 228. And the Washington Supreme Court's interchangeable use of "jury selection" and "voir dire" has been viewed as "inadvertent and *not* as evincing the Court's intent to treat these two terms as synonymous for precedential purposes." *Wilson*, 174 Wn. App. at 338-39; *see also Slert*, 181 Wn.2d at 605. Thus, whether swearing in a venire in a jury assembly room implicates a defendant's public trial right is one of first impression.

Application of the experience and logic test shows swearing in the venire does not implicate the public trial right. Under this test, appellate courts must consider "(1) whether the process and place of a proceeding historically have been open to the press and general public (experience prong) and (2) whether access to the public plays a significant positive role in the functioning of the proceeding (logic prong)." *Miller*, 184 Wn. App. at 644. It is solely when both prongs are answered affirmatively does the public trial right attach. *Id.*

6

In analyzing the experience prong, Mr. Parks does not cite to, and we could not find, any case holding (1) swearing in a venire has historically been open to the public or (2) the public trial right attaches to any component of jury selection that does not involve "voir dire" or a similar jury selection proceeding involving the exercise of peremptory challenges and for cause juror excusals. It is debatable whether swearing in a venire constitutes a part of "jury selection." In the absence of a record otherwise, the trial court presumably gave the advance oral instruction before voir dire as seen in 11 *Washington Practice, Washington Pattern Jury Instructions: Criminal* 1.01 (2014). The notes on the use of this instruction state it is to be read *before* the jury is selected and contains basic educational information the venire needs to know *before* voir dire begins. Even if it the giving of such an instruction is considered part of jury selection, it is more analogous to an administrative component of the jury selection process to which the public trial right does not attach. *See, e.g., Wilson*, 174 Wn. App. at 342-47 (finding the experience prong not satisfied where the court engaged in the administrative component of the jury selection process when the bailiff excused two ill jurors before voir dire commenced).

Likewise, Mr. Parks cannot satisfy the logic prong. When considering this prong, courts should consider "the values served by open courts." *Sublett*, 176 Wn.2d at 74. Mr. Parks has not shown (1) public access plays a significant positive role in the functioning of the swearing in a venire, (2) swearing in a venire is a proceeding similar

7

to the trial itself, or (3) openness during swearing in would enhance the basic fairness of his trial and the appearance of fairness.[5] *See Wilson*, 174 Wn. App. at 346.

## B.  SAG

In both his SAG and consolidated PRP, Mr. Parks argues J.M.'s testimony did not match the crime of second degree rape.[6] Mr. Parks questions whether the court erred in instructing the jury on second degree rape.  Thus, our concern is whether the trial court erred in instructing the jury on the lesser included offense of second degree rape where the facts do not support the instruction.

A two-prong test is used for determining whether a lesser included offense instruction should be given: (1) "First, each of the elements of the lesser included offense must be a necessary element of the offense charged," and (2) "the evidence in the case must support an inference that the lesser crime was committed." *State v. Workman*, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978).  Mr. Parks solely challenges the second prong.

Under the *Workman* factual prong, "there must be some affirmative proof that the defendant committed only the lesser crime." *State v. Brown*, 127 Wn.2d 749, 754, 903 P.2d 459 (1995).  "It is not enough that the jury might simply disbelieve the State's

---

[5] The State argues, in the alternative, Mr. Parks' failure to object at trial prohibits review under RAP 2.5(a).  However, this argument was rejected in *Njonge*, 181 Wn.2d at 554-55.

[6] Because the argument raised in his PRP duplicates his direct appeal, we discuss solely Mr. Parks' SAG contention without need to separately address his PRP.

evidence." *State v. Fowler*, 114 Wn.2d 59, 67, 785 P.2d 808 (1990), *overruled on other grounds by State v. Blair*, 117 Wn.2d 479, 816 P.2d 718 (1991). Mr. Parks was charged with first degree rape; the elements of first degree rape include engaging in sexual intercourse with a person by forcible compulsion and using or threatening to use a deadly weapon. RCW 9A.44.040. The elements of second degree rape include sexual intercourse with another by forcible compulsion. RCW 9A.44.050. Second degree rape does not require the State to prove the use or threatened use of a deadly weapon. RCW 9A.44.050.

In *Brown*, the defendant was convicted of the lesser included offense of second degree rape. *Brown*, 127 Wn.2d at 753-54. The defendant argued, and the Washington Supreme Court agreed, neither party produced affirmative evidence he committed solely second degree rape. *Id.* at 754-56. The victim testified the defendant and three other men forced her to have sexual intercourse and the defendant held a gun on her at some point. *Id.* at 752. On the other hand, the defendant testified the sex was consensual in exchange for money. *Id.* at 753. The court of appeals upheld the conviction, finding affirmative evidence the defendant committed only second degree rape where the jury could have found no gun was used because there was evidence tending to impeach her claim a gun was used. *Id.* at 755. The Supreme Court disagreed, stating "Impeachment evidence that serves only to discredit the State's witness but does not itself establish that only the lesser crime was committed cannot satisfy the factual prong of *Workman*." *Id.* The court also disagreed with the State's

9

contention some other form of forcible compulsion was used to make the victim initially submit to the rape because the gun was not produced until late in the rape. *Id.* at 755-56.

On the surface, Mr. Parks' case looks similar to *Brown*. J.M. testified Mr. Parks forced her to have sexual intercourse and he held a knife to her in order to get her to walk into a secluded area. Mr. Parks testified the sex was consensual for money. He contends no affirmative evidence supports the conclusion he raped J.M. but did not use a deadly weapon. But unlike in *Brown*, affirmative evidence shows Mr. Parks used forcible compulsion to rape J.M. Ms. Sanford testified about the bruising she saw on J.M.'s leg and ankle. Dr. Kuehl testified about bruising and tenderness on J.M.'s lower body and genital area. The doctor affirmatively answered the injuries were consistent with forcible intercourse. When viewed most favorably to the State, this evidence sufficiently evidence supports an inference solely the lesser crime was committed. *See State v. Fernandez-Medina*, 141 Wn.2d 448, 455-56, 6 P.3d 1150 (2000) (when applying the factual prong, an appellate court should determine if the evidence, when viewed in the light most favorable to the party requesting the instruction, was sufficient to support the instruction). Therefore, we conclude the trial court did not err in instructing on the lesser included offense of second degree rape.

10

No. 26476-9-III cons. w/ 27294-0-III
*State v. Parks* cons. w/ *In re PRP of Parks*

Affirmed; Mr. Parks' PRP is dismissed.

Brown, J.
_____
Brown, J.

WE CONCUR:

Siddoway, C.J.
_____
Siddoway, C.J.

Lawrence-Berrey, J.
_____
Lawrence-Berrey, J.

11