IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 35457-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| SHAUN PAUL DAVIS, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — Shaun Paul Davis appeals his conviction for attempting to elude

a police vehicle and related sentence enhancement. We affirm Mr. Davis's conviction,

but remand for correction of a scrivener's error and to strike certain legal financial

obligations made inapplicable by recent statutory amendments.

FACTS

On September 2, 2015, just after 6:00 p.m., Washington State Patrol Trooper

Douglas Power was on duty and parked on Third Avenue near Lee Street in Spokane.

Trooper Power's attention was drawn to a motorcycle driving east on Third Avenue, because the motorcycle did not have mirrors. The driver of this motorcycle was later identified as Shaun Davis. Trooper Power began following the motorcycle in his patrol car. Trooper Power activated his emergency lights but the motorcycle continued driving, so Trooper Power activated the patrol car's siren. Mr. Davis looked back at Trooper Power, then turned forward, lowered his head and accelerated. Trooper Power advised communications that a motorcycle was running from him.

Mr. Davis turned right onto Thor Street, maneuvering around cars and cutting through traffic, and then drove into a gas station parking lot at the corner of the intersection. Mr. Davis then drove through an alley next to the gas station and continued on Third Avenue, but failed to stop at a stop sign when making a right turn. When Mr. Davis reached Freya Street, he slowed down and continued to drive through a red light even though other cars were present. Trooper Power paused, with his lights and siren still on, before he drove through the red light to ensure traffic was clear. He continued to pursue as Mr. Davis drove through another stop sign at Havana Street.

At this point, Third Avenue curves and turns into Fourth Avenue while it continues parallel to the freeway. During this time, Trooper Power estimated the speed of the motorcycle to be 80 miles per hour (m.p.h.), which is 50 m.p.h. over the posted speed

limit. Other cars on the road began pulling off onto the shoulder as Mr. Davis continued through this area.

Trooper Power noticed as Mr. Davis approached Sherman Avenue that he drove into the oncoming lane and looked back at Trooper Power. Then Mr. Davis drove through another stop sign and turned right onto another road. Trooper Power noticed that Mr. Davis was "wobbling the turn," and slowing down prior to turning, which gave him the impression that Mr. Davis was an inexperienced motorcyclist. 1 Report of Proceedings (May 9, 2017) at 84.

Trooper Power continued to pursue Mr. Davis as he drove up to Eighth Avenue where he made another right turn without stopping at the stop sign. Trooper Power noted there was slightly more traffic on Eighth Avenue, and that it had hills that limited visibility in places. Mr. Davis began passing traffic by crossing over the double-yellow divider and driving in the oncoming lane. However, Trooper Power advised communications that Mr. Davis was passing in a no-passing zone "in a safe manner, not really endangering too many people at [that] time." *Id*. at 85. Trooper Power also stated that Mr. Davis's driving speeds were excessive and that passing in a no-passing zone in an area with limited visibility meant unsuspecting motorists may not see what was coming at them.

Then Mr. Davis turned onto a residential street and quickly accelerated. At the end of this street, Mr. Davis circled back onto Fourth Avenue and continued on even though Fourth Avenue turned into a one-way street. Trooper Power continued to pursue Mr. Davis until Fourth Avenue became a one-way street which, for safety reasons, forced Trooper Power to terminate his pursuit. Trooper Power stated that traveling down the one-way street, which was eastbound, in the wrong direction, as Mr. Davis was doing, was dangerous to himself, Mr. Davis, and other cars and motorists on the street since Fourth Avenue turned into a "one-lane, one-way street," with "no shoulder, . . . no second lanes, [and] no place to go for" oncoming traffic. *Id.* at 87.

Spokane County Sheriff's Deputy James Wang heard about the pursuit over his radio and located Mr. Davis around 6:12 p.m. as Mr. Davis was driving the wrong way on Third Avenue, a one-way street. Deputy Wang activated his vehicle's lights and sirens and attempted to stop Mr. Davis. Mr. Davis looked back at Deputy Wang and then accelerated. Multiple cars approached Mr. Davis and Deputy Wang, which led to Mr. Davis driving on the shoulder of the road to avoid hitting them. Deputy Wang ultimately terminated his pursuit of Mr. Davis due to safety concerns.

Spokane Police Officer Jeremey Howe also heard about the pursuit of Mr. Davis over his radio and intercepted Mr. Davis near the intersection of Fancher Road and Third

4

Avenue.  Officer Howe ended up chasing Mr. Davis on foot, which Trooper Power

witnessed.  Trooper Power accelerated down the road in his patrol car and cut Mr. Davis

off in a parking lot, after which Mr. Davis was arrested.  The total pursuit covered about

6.1 miles of roadway, occurred during rush hour on a weeknight, and lasted about 11

minutes.

The State charged Mr. Davis with possession of a stolen motor vehicle, attempting

to elude a police vehicle, and first degree driving while license suspended or revoked.

Mr. Davis was alleged to have eluded "a uniformed law enforcement officer with the

Washington State Patrol."  Clerk's Papers (CP) at 140.  The eluding count also alleged a

sentencing enhancement, or aggravating circumstance, in that when Mr. Davis committed

the crime, "one or more persons, other than [Mr. Davis] or the pursuing law enforcement

officer, were threatened with physical injury or harm by the actions of [Mr. Davis] under

the provisions of RCW 9.94A.834."  *Id.*

The case proceeded to a jury trial and the witnesses testified consistent with the

facts described above.  Mr. Davis's defense was that he was not the individual who had

been operating the motorcycle.  Consistent with this defense, Mr. Davis did not cross-

examine Trooper Power about what happened during the motorcycle pursuit.  Deputy

Wang was also not cross-examined by Mr. Davis.

5

No. 35457-1-III
*State v. Davis*

The jury instructions included a reasonable doubt pattern criminal jury instruction. CP at 152; 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 4.01, at 93 (4th ed. 2016) (WPIC). Also included with the instructions was a special verdict form directing the jury to answer "yes" or "no" to the following question should it find Mr. Davis guilty of eluding: "Was any person, other than SHAUN DAVIS or a pursuing law enforcement officer, threatened with physical injury or harm by the actions of SHAUN DAVIS during his commission of the crime of attempting to elude a police vehicle?" CP at 171, 175. The language of the special verdict form was taken from WPIC 190.12. However, contrary to the note on use accompanying WPIC 190.12, the trial court did not instruct the jury pursuant to WPIC 160.00 that the State needed to prove the facts alleged in the special verdict form beyond a reasonable doubt. Mr. Davis did not object to the court's instructions.

At the end of trial, the jury found Mr. Davis not guilty of possession of a stolen motor vehicle, but guilty of attempting to elude a police vehicle, with the endangerment sentencing enhancement, and first degree driving while license suspended or revoked. The jury returned its verdicts on May 10, 2017. The trial court sentenced Mr. Davis to 37.5 months and 1 day of confinement and imposed only mandatory costs,

6

including a $500 victim assessment, a $200 criminal filing fee, and a $100 DNA (deoxyribonucleic acid) collection fee.

Mr. Davis appeals.

## ANALYSIS

*Sufficiency of the evidence—endangerment sentencing enhancement*

Mr. Davis argues insufficient evidence supports the endangerment sentencing enhancement because Trooper Power's testimony and the dash cam video recording from his patrol car does not show that anyone else was endangered or threatened by Mr. Davis's actions while he was attempting to elude Trooper Power. Mr. Davis also contends that because the information only alleged the involvement of an officer with the Washington State Patrol, the testimony of law enforcement officers from other agencies should not be considered since they were not officers with the Washington State Patrol.

This court reviews a jury's special verdict finding under the sufficiency of the evidence standard. *State v. Stubbs*, 170 Wn.2d 117, 123, 240 P.3d 143 (2010). In doing so, we view the evidence in the light most favorable to the State and assess whether any rational trier of fact could have found the relevant facts proved beyond a reasonable doubt. *See State v. Yates*, 161 Wn.2d 714, 752, 168 P.3d 359 (2007), *abrogated on other grounds by State v. Gregory*, __ Wn.2d __, 427 P.3d 621 (2018).

Initially, Mr. Davis claims we should limit our sufficiency analysis to Trooper Power's testimony because the charging document specified that Mr. Davis had failed to bring his vehicle to a stop as signaled "by a uniformed law enforcement officer *with the Washington State Patrol*." CP at 140 (emphasis added). Trooper Power was the only state patrol officer involved in Mr. Davis's pursuit. Thus, Mr. Davis claims the State was obliged to prove Mr. Davis's offense conduct, including the conduct pertinent to his sentence enhancement, occurred during the pursuit by Trooper Power.

We disagree with Mr. Davis's narrow reading of the State's case. The language in the information that gives rise to Mr. Davis's challenge was a surplus allegation, unnecessary to prove the crime charged. Mr. Davis did not make any variance or surplusage objections at trial. Nor does he claim prejudice on appeal. Given these circumstances, Mr. Davis is not entitled to relief based on an improper variance. *State v. Tvedt*, 153 Wn.2d 705, 718, 107 P.3d 728 (2005) ("[W]here unnecessary language is included in an information, the surplus language is not an element of the crime that must be proved unless it is repeated in the jury instructions."); *State v. Tharp*, 42 Wn.2d 494, 497, 256 P.2d 482 (1953) ("[N]o question of variance was raised in the trial court, and it cannot be raised successfully for the first time on appeal.").

Looking at the substance of Mr. Davis's challenge, the State was required to prove beyond a reasonable doubt that "one or more persons," other than Mr. Davis or the pursuing law enforcement officers, were "threatened with physical injury or harm" by Mr. Davis's eluding offense. RCW 9.94A.834. Sufficient evidence supports the jury's conclusion that the State met this burden. The most compelling testimony came from Deputy Wang. According to Deputy Wang, he encountered Mr. Davis's motorcycle as it was accelerating up a one-way street in the wrong direction. The applicable speed limit was 35 m.p.h. and Deputy Wang had to travel at 50 m.p.h. in his attempt to catch up to Mr. Davis. Initially, Deputy Wang did not observe any traffic on the one-way street. But that changed. A "[b]unch of cars started coming around the curve and coming" toward Mr. Davis and Deputy Wang. RP at 121. Mr. Davis "actually had to bail out onto the shoulder to avoid hitting some cars." *Id*. Deputy Wang then terminated pursuit for the safety of the public and Mr. Davis. Deputy Wang's testimony alone was sufficient to justify Mr. Davis's endangerment enhancement.

*Jury instruction—endangerment sentencing enhancement*

Mr. Davis argues the court's instruction for the endangerment sentencing enhancement was defective because it did not require the State to prove endangerment

9

beyond a reasonable doubt. Mr. Davis also contends that this was a structural error, requiring reversal regardless of prejudice.

Mr. Davis's criticism of the trial court's instruction is well taken. The court's instructions did not specify that the State had to prove the endangerment enhancement beyond a reasonable doubt. Consistent with the suggestion set by WPIC 190.12, the trial court should have instructed the jury that the State retained the "beyond a reasonable doubt" standard of proof with respect to the enhancement. *See State v. Tongate*, 93 Wn.2d 751, 754, 613 P.2d 121 (1980). This easily could have been accomplished by issuing an instruction consistent with WPIC 160.00. The trial court's failure to provide an instruction clarifying the burden of proof as to the endangerment sentencing enhancement was error.

While we agree with Mr. Davis about the existence of error, we disagree with his assessment of the nature of that error. Mr. Davis claims the flaw in the trial court's instructions was a structural error, requiring reversal without an assessment of prejudice. Binding precedent compels us to disagree.

The Supreme Court rejected a structural error argument similar to Mr. Davis's in *State v. Fowler*, 114 Wn.2d 59, 785 P.2d 808 (1990), *disapproved of on other grounds by State v. Blair*, 117 Wn.2d 479, 816 P.2d 718 (1991). *Fowler* involved a deadly weapon

enhancement.  The court held that where no reasonable doubt instruction is provided at all to the jury, such error is reversible per se.  *Id*. at 64.  However, "in cases where the jury is instructed at least once on the State's burden of proof in a criminal case, the omission of further instruction where required [for a sentencing enhancement special verdict] shall be analyzed by looking at whether the error was harmless beyond a reasonable doubt."  *Id*.

Here, Mr. Davis's jury received a reasonable doubt instruction.  There were no other instructions addressing the nature of the State's burden of proof.  Thus, *Fowler* dictates that structural error does not apply.  Instead, we assess whether the trial court's failure to provide a reasonable doubt instruction in the context of the endangerment sentencing enhancement was harmless beyond a reasonable doubt.

We find the instructional error harmless.  At trial, the State presented uncontested evidence that Mr. Davis operated his motorcycle in a manner that presented a danger to the public.  Given this circumstance and the nature of Mr. Davis's defense, an additional instruction clarifying the nature of the State's burden of proof was not apt to change the outcome of trial.  *See id*. at 65 (Where undisputed evidence supported the finding that the defendant was armed with a deadly weapon, omission of a reasonable doubt instruction specifically on the deadly weapon charge was harmless beyond a reasonable doubt.).

Mr. Davis's endangerment sentencing enhancement is therefore affirmed.

*Scrivener's error*

Mr. Davis argues, and the State concedes, that there is a scrivener's error in the judgment and sentence for his first degree driving while license suspended or revoked conviction. The judgment and sentence incorrectly states that Mr. Davis was found guilty on June 20, 2017, even though he was actually found guilty on May 10, 2017. Because Mr. Davis was found guilty on May 10, rather than on June 10, of first degree driving with a suspended or revoked license, remand is appropriate to correct this error. *State v. Healy*, 157 Wn. App. 502, 516, 237 P.3d 360 (2010); *In re Pers. Restraint of Mayer*, 128 Wn. App. 694, 701-02, 117 P.3d 353 (2005) (The remedy for a clerical or scrivener's error in the judgment and sentence is remand to the trial court for correction.).

## STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW

Mr. Davis has filed a statement of additional grounds for review raising one claim. He asks whether there was ineffective assistance of counsel when the jury was allowed to see Mr. Davis's criminal record by means of his driving record. Mr. Davis's vague assignment of error is insufficient to inform the court of the nature and occurrence of his claimed error. We therefore decline review. RAP 10.10(c).

No. 35457-1-III
*State v. Davis*

MOTION TO STRIKE FEES ASSESSED BY TRIAL COURT

Citing *State v. Ramirez*, __ Wn.2d __, 426 P.3d 714 (2018), Mr. Davis has moved

to strike the $200 criminal filing fee and $100 deoxyribonucleic acid (DNA) collection

fee imposed by the trial court at sentencing. *Ramirez* was decided after the close of

briefing in this case. The decision held that the 2018 amendments[1] to Washington's

legal financial obligation scheme apply prospectively to cases on direct review at the

time of enactment. Of interest to Mr. Davis, the 2018 amendments prohibit imposition

of a $200 criminal filing fee on defendants who are indigent at the time of sentencing as

defined by RCW 10.101.010(3)(a)-(c). RCW 36.18.020(2)(h). Also prohibited is the

assessment of a DNA database fee if the State has previously collected the defendant's

DNA as a result of a prior felony conviction. RCW 43.43.7541.

The record before the court indicates Mr. Davis's motion is controlled by

*Ramirez*.[2] Specifically, Mr. Davis was indigent at the time of sentencing and Mr. Davis's

lengthy felony record indicates a DNA fee has previously been collected. Accordingly,

we grant Mr. Davis's motion and direct the trial court to strike the $200 filing fee and

$100 DNA fee from Mr. Davis's judgment and sentence.

---

[1] LAWS OF 2018, ch. 269.
[2] The State has not responded to Mr. Davis's motion.

13

APPELLATE COSTS

Mr. Davis objects to imposition of appellate costs under RAP 14.2 should the State prevail on appeal. Mr. Davis has submitted a declaration supporting his continued indigence. The State does not question the accuracy of Mr. Davis's information or claim there has been a change of circumstances. Accordingly, Mr. Davis's request to deny appellate costs is granted.

CONCLUSION

The judgment of conviction is affirmed. This matter is remanded for correction of a scrivener's error regarding Mr. Davis's conviction date and to strike the $200 filing fee and $100 DNA collection fee. Mr. Davis's request to deny appellate costs is granted.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____      _____
Lawrence-Berrey, C.J.            Siddoway, J.